**PINEBROOK PROPERTIES, LTD., Appellant,**

**v.**

**BROOKHAVEN LAKE PROPERTY OWNERS ASSOCIATION, Appellee.**

No. 06–01–00093–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 25, 2002.

Decided May 24, 2002.

Rehearing Overruled June 18, 2002.

Michael E. Starr, Hommel & Starr, PC, Tyler, for appellant.

David B. Griffith, Griffith Law Firm, PC, Gilmer, Angela Rene Smoak, Assistant District Attorney, Longview, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Pinebrook Properties, Ltd., Pinebrook Properties Management, L.L.C., and A.C. Musgrave, Jr. (Pinebrook) appeal the trial court's judgment providing various relief for the different parties. The conflict embodied in this litigation is the culmination of a long and complicated history, including two prior suits resulting in appeals to this Court. The case currently before us

(Musgrave III) is the result of the consolidation by the trial court of a suit filed in the year 2000 by Pinebrook Properties against Brookhaven Lake Property Owners Association and counterclaims by the Association and various lot owners (Owners) remaining after they were severed from a 1997 lawsuit. The other claims from the 1997 lawsuit were the subject of a recent appeal to this Court, which were decided in *Musgrave v. Owen*, 67 S.W.3d 513 (Tex.App.-Texarkana 2002, no pet.) (*Musgrave* II).

Pinebrook brings eight issues in this appeal: 1) whether the trial court erred by denying, on grounds of res judicata and collateral estoppel, claims for injunctive relief sought by Pinebrook Properties against the Association; 2) whether the trial court erred in finding Pinebrook Properties and Pinebrook Management are the alter egos of Musgrave; 3) whether the trial court erred by rendering judgment for the Association in the capacity in which it sued; 4) whether the trial court erred by concluding that Pinebrook has no authority to regulate property which it owns and that the Association has authority to regulate that same property; 5) whether the trial court erred by finding an implied dedication of a roadway constructed on property owned by Musgrave or Brookhaven Retreat, Inc.; 6) whether the Association should have been awarded damages for work it chose to perform on the lake and roadways in the Brookhaven in the Pines Addition; 7) whether the trial court erred by granting any injunctive relief to the Owners against Pinebrook; and 8) whether the trial court erred by awarding attorney's fees and expenses to the Association under the Uniform Declaratory Judgments Act[1] when the Association did not plead for attorney's fees under the

Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997).

On May 9, 2000, Pinebrook Properties, the owner of the common areas in a subdivision in Wood County known as the Brookhaven in the Pines Addition, filed this suit against the Association in Cause Number 2000-249. Pinebrook Properties sought injunctive relief, declaratory judgment, monetary damages for trespass, and attorney's fees. On February 8, 2001, the trial court severed a partial summary judgment in Cause Number 98-420, on which we ruled in *Musgrave* II, 67 S.W.3d 513. The trial court consolidated all counterclaims from Cause Number 98-420 with Cause Number 2000-249, which is now before this Court in Musgrave III.

Musgrave succeeded three other owners as the owner of certain real property in the Brookhaven in the Pines Addition. He purchased the lake, the roadways serving the lots, and some forested recreational property in the addition. The lot owners enjoy exclusive rights to hunt, fish, and recreate on the recreational property and the lake, and to use the roadways for ingress and egress. *Anderson v. McRae*, 495 S.W.2d 351, 355 (Tex.Civ.App.-Texarkana 1973, no writ).

In December 1998, Pinebrook Properties, a Texas limited partnership, succeeded Musgrave's interest in the lake, roadways, and recreational property. Pinebrook Management, a Texas limited liability company, is the general partner of Pinebrook Properties. In this case (Musgrave III), Pinebrook Properties filed suit seeking injunctive relief from the trial court to stop the Association from working on the roadways and lake, and then billing Pinebrook. The Owners, the appellees in Musgrave III, include a number of people who were not parties

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 37.001, et seq. (Vernon 1997 & Supp.2002).

to the first suit involving the Brookhaven in the Pines Addition, which we decided in *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386 (Tex.App.-Texarkana 1999, pet. denied) (*Musgrave* I). As counterplaintiffs in Musgrave III, the Owners sought injunctive relief, declaratory judgment, and monetary relief against Pinebrook Properties, Pinebrook Management, and Musgrave. They contend Pinebrook Properties and Pinebrook Management are merely alter egos of Musgrave, who transferred his interest in the property to Pinebrook Properties in December 1998.

To better understand the issues in this appeal (Musgrave III), a more detailed review of the events and actions occurring in *Musgrave* I and *Musgrave* II is helpful. In *Musgrave* I, Brookhaven Lake Property Owners Association and six individual lot owners (*Musgrave* I plaintiffs) filed suit against Musgrave and others claiming a restrictive covenant obligated Musgrave to perform maintenance on the roadways and lake for the benefit of all the lot owners in the subdivision and requesting 1) permanent injunctions enjoining defendants from closing a roadway, promoting and allowing recreational use of the property by paying customers, and timbering in the recreational areas without following reasonable restrictions to be established by the court, as well as 2) damages to reimburse *Musgrave* I plaintiffs for funds expended on the maintenance of the roadways and lake. The *Musgrave* I plaintiffs asserted that the issue of obligation was established in a previous suit, *Anderson*, 495 S.W.2d 351, and that Musgrave was barred from denying the obligation by collateral estoppel.

Musgrave presented several counterclaims in *Musgrave* I seeking: 1) a declaratory judgment that he had no affirmative duty to maintain the roadways and lake in the subdivision, claiming the duty did not

run with the land; 2) a declaratory judgment that guests of Musgrave's retreat may use the lake and recreational property, asking the court to determine the requirements that had to be met in order for a guest to be considered "accompanied" by a lot owner, including the maximum number of guests who may use the land at the same time; 3) a declaratory judgment that implementation of the Forest Resource Management Plan was a reasonable use of the recreational areas covered by that plan; and 4) a declaratory judgment that Robert Owen's actions in maintaining a water line on Musgrave's property was a violation of Musgrave's property rights.

The *Musgrave I* plaintiffs asserted special exceptions to Musgrave's counterclaims, arguing that not all necessary parties were present in the suit. There was nothing in the record to indicate that the court ruled on these special exceptions or that the counterclaims were abandoned. We therefore assumed the counterclaims were live at the time of judgment.

The trial court granted judgment for the *Musgrave I* plaintiffs, permanently enjoining Musgrave 1) from closing the proposed roadway; 2) from permitting guests of the retreat who were not lot owners to use certain areas; 3) from interfering with the exclusive rights of the lot owners to use the lake, roadways, and hunting and recreational areas in the addition; 4) from timbering for commercial purposes; and 5) from implementing the Forest Resource Management Plan, or any similar plan, for the commercial harvesting of trees. The judgment also awarded the plaintiffs damages to compensate them for funds expended on maintenance that the court found Musgrave had a duty to perform. The judgment stated that all relief not expressly granted was denied. Therefore, we assume the counterclaims, although not

explicitly mentioned in the judgment, were denied.

This Court affirmed the judgment, in part, in *Musgrave I*. We affirmed the trial court's determination that Musgrave was required by the covenants running with the land to maintain the roadways, lake, and recreational property, but reversed injunction 5) above because it referred to a document not made part of the order. We reversed the portion of the award for damages that were barred by the statute of limitations and reformed the award of attorney's fees as excessive.

In the second suit, *Musgrave II*, Musgrave appealed the granting of summary judgment in favor of the Owners and some of the lot owners, dismissing his claim for declaratory relief regarding certain rights and responsibilities under a restrictive covenant. *Musgrave v. Owen*, 67 S.W.3d 513. In *Musgrave II*, Musgrave sought 1) a declaration that the defendants may not operate a dump facility on the recreational property owned by the plaintiff because the property is subject only to the rights of recreational use by the lot owners; 2) a declaration that Musgrave, as owner of the recreational property, is the sole person authorized to create rules and regulations regarding the use of the recreational property; 3) a declaration that neither the Association nor any lot owner other than Musgrave is authorized to take any action regarding the maintenance, repairs, improvements, modifications, or alterations of the recreational property, including but not limited to the roadways, lake, and dam, without first obtaining Musgrave's consent; 4) a declaration that Musgrave is authorized to install speed control devices across the roadways within the subdivision property for safety purposes; 5) a declaration specifying the nature and extent of Musgrave's obligation, if any, to maintain the roadways and lake within the recreational property; 6) a declaration that defendants are not authorized to utilize water in the lake for any purpose other than recreation and a further declaration that the current use of water by certain lot owners is unauthorized; 7) attorney's fees; 8) costs of suit; and 9) other entitled relief.

In *Musgrave II*, the Owners moved for summary judgment, arguing that Musgrave's claims were barred by res judicata because of the proceedings in *Musgrave I*. Summary judgment proof in *Musgrave II* consisted only of the final live pleadings and the final judgment in *Musgrave I*. The trial court granted summary judgment on the ground of res judicata. We reversed and remanded, holding that, although the claims arose out of the same transaction that was the subject matter of the prior claims in *Musgrave I*, the movants did not provide summary judgment proof that Musgrave's claims in *Musgrave II* were mature during *Musgrave I*. *Musgrave v. Owen*, 67 S.W.3d at 522.

In Musgrave III, Pinebrook Properties sought 1) a temporary and permanent injunction to enjoin further work by the Association on the roadways, lake, and recreational property; 2) a declaratory judgment that Pinebrook Properties, not the Association, is the only entity authorized to perform such work; 3) a judgment in damages against the Association for the trespass it committed while performing work on the roadways, lake, and recreational property of Brookhaven in the Pines; 4) reasonable and necessary attorney's fees; 5) Pinebrook Properties' costs of suit; and 6) prejudgment and postjudgment interest at the highest rate allowed by law. The Owners sought 1) injunctive relief, 2) declaratory judgment, 3) monetary damages, and 4) attorney's fees.

The trial court rendered judgment in favor of the Owners. The trial court, in its amended findings of fact and conclusions

of law, found 1) Pinebrook's claims are barred by the doctrine of res judicata through the compulsory counterclaim requirement in prior Cause Number 94–395 (*Musgrave I*), and that Pinebrook therefore take nothing in this suit; 2) Pinebrook's claims are barred by the doctrine of collateral estoppel, and that Pinebrook therefore take nothing in this suit; 3) Pinebrook° Management and Pinebrook Properties are alter egos of Musgrave, and that Musgrave and/or any alter ego of Musgrave, his agents, servants, and/or employees have no control over the lake and recreational areas located in the Brookhaven in the Pines subdivision, and are without authority to promulgate rules and regulations regarding the lake and property located in the Brookhaven in the Pines subdivision, as such action has and will interfere with the property owners' exclusive rights to the use and enjoyment of said lake, dam, roadways, and recreational areas; 4) all roadways impliedly dedicated as public roads shall remain open to the public and the lot owners, and such roadways include, but are not limited to, all existing roadways located in the Brookhaven in the Pines subdivision; that the lot owners of Brookhaven in the Pines subdivision, as well as the public, are entitled to and shall have a prescriptive easement as to the said roadways; 5) Pinebrook take nothing against the Owners; that Pinebrook is responsible for the maintenance of the lakes, dam, recreational areas, and roadways located in the Brookhaven in the Pines subdivision, as previously ordered by the trial court; that Pinebrook is responsible for the debts incurred by the Association for the necessary maintenance of said lake, recreational property, and roadways; that the amounts expended by the Association were reasonable and necessary for the preservation of the roadways, lake, and recreational property; and that the Association is entitled to reimbursement in the amount of $11,910.08; 6) the Association is entitled and has authority to promulgate and enforce rules and regulations which protect the property owners' exclusive rights to the use and enjoyment of the said lake, dam, roadways, and recreational areas; 7) the Owners have no adequate remedy at law for the losses and injuries, both actual and threatened, and that such injuries and losses are continuing and irreparable; the rights involved are unique and irreplaceable, so that it is impossible to accurately measure, in monetary terms, the damages caused and to be caused by Pinebrook's conduct; and that the losses to the Owners from Pinebrook's conduct are likely to exceed the financial worth of Pinebrook, so as to prevent any adequate compensation for the Association, even if money damages were a sufficient remedy; and 8) that under the Uniform Declaratory Judgments Act, the Association is entitled to recover reasonable and necessary attorney's fees and costs, and that in order to protect and preserve the rights of the Association, and to prepare and defend this suit, it was necessary for the Association to secure the services of an attorney, and that attorney's fees in the amount of $12,527.50 are reasonable and necessary.

In its final judgment, the trial court declared that "A. C. Musgrave, Jr., Pinebrook and/or Pinebrook Management and Pinebrook Properties, Ltd., and any agents, servants, alter egos and/or employees" have no authority, directly or indirectly, to promulgate rules regarding the lake, Brookhaven in the Pines subdivision, or the dam, recreational property, forested areas, and roadways contained in the subdivision. Additionally, the trial court permanently enjoined such persons and entities from 1) further interfering with replacement garbage dumpsters at the garbage collection site on recreational property located

in the subdivision; 2) allowing wake-producing watercraft and recreational vehicles to be used by lot owners and guests of lot owners on the recreational property, roadways, lake, and dam contained in the Brookhaven addition, contrary to rules established by the Association; 3) allowing use of the lake and dam to anyone, other than lot owners and their accompanied guests, as previously ordered by the court; 4) installing speed control bumps on roadways contained in the subdivision and directing them to remove those speed control bumps already installed; 5) lowering the level of the lake without consent from and coordination with the Association; 6) promulgating rules and regulations regarding the subdivision which would interfere with the lot owners' exclusive rights to enjoy the lake, dam, recreational areas, and roadways; 7) closing any roadway of the subdivision or otherwise interfering with the lot owners' use and enjoyment of roadways located in the subdivision or accessing the subdivision; and 8) interfering with the exclusive rights of the lot owners of Brookhaven to use the lake, dam, roadways, and recreational areas.

The trial court further adjudged the Association recover from Musgrave[2] judgment for: $11,910.08 as reimbursement for amounts expended for the necessary maintenance of the lake, dam, and roadways; $12,527.50 in attorney's fees, plus $5,000.00 in attorney's fees through appeal to the court of appeals, and an additional $5,000.00 through appeal to the Texas Supreme Court; interest at the legal rate per year on the total judgment from the date of judgment until paid; and costs of court.

In its first point of error, Pinebrook contends the trial court erred in finding Pinebrook Properties' claims are barred by the doctrine of res judicata. Pinebrook contends the trial court erred in finding its claims arise from the same transaction which formed the basis of Cause Number 94–395 (*Musgrave I*). The question whether res judicata applies in a given instance is a mixed question of law and fact. When the trial court decides a matter involving both factual determinations and legal conclusions, appellate courts generally use an abuse of discretion standard of review. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.-San Antonio 1996, no writ). In applying this standard, we defer to the trial court's factual determinations, as long as the record properly supports them, and we review its legal determinations de novo. *Id.* (citing *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992)). Here, the parties do not dispute any factual issue. Because the only issues presented for review involve purely legal determinations, the proper standard of review is de novo. *See Walker,* 827 S.W.2d at 840.

 The doctrine of res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as all related matters that, with the use of diligence, could or should have been litigated in the prior action. *Compania Financiara Libano v. Simmons,* 53 S.W.3d 365, 367 (Tex. 2001); *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 631 (Tex.1992); *Musgrave v. Owen,* 67 S.W.3d at 519. The bar of a claim by res judicata requires proof of the following elements: 1) a prior final judgment on the merits by a court of competent jurisdiction; 2) identity of parties or

---

**2.** Although the Owners sued Musgrave, Pinebrook Management, and Pinebrook Properties, the judgment for monetary damages and attorney's fees is only for the Association and against Musgrave.

those in privity with them; and 3) a second action based on the same claims that were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

 Res judicata only applies to the cause of action filed by the plaintiff, not to the counterclaim which might have been filed by the defendant, unless the compulsory counterclaim rule is applicable. *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 281 (Tex.App.-Amarillo 1990, writ denied). A compulsory counterclaim is defined as any counterclaim 1) within the trial court's jurisdiction, 2) not the subject of a pending action, 3) which is mature when the pleading is filed, 4) arising out of the same transaction or occurrence as the opposing party's claim, and 5) not requiring for adjudication the presence of parties over whom the court cannot obtain jurisdiction. TEX.R. CIV. P. 97(a). Res judicata applies only to adverse parties. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex.1992). Where a defendant asserts a cross-claim against a coparty, they become adverse and the principles of res judicata apply. The cross-claimant becomes a plaintiff for res judicata purposes and is required to assert all claims against the cross-defendant arising from the subject matter of the original cross-claim. *Id.*

 Texas follows the transactional approach to res judicata in determining what permissible claims should have been brought in a prior action. *Barr*, 837 S.W.2d at 630–31.

> A final judgment extinguishes the right to bring other suits on the transaction or series of transactions involved in that litigation.... In determining whether the transaction is the same, we consider and weigh whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial

unit; and whether their treatment as a trial unit conforms to the parties' expectations or business usage.

*Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 597 (Tex.App.-Texarkana 1994, writ denied). The transactional approach requires courts, in order to determine res judicata, to examine the factual bases, not the legal theories, presented in the cases. *See Kenneco Energy, Inc. v. Johnson & Higgins of Tex., Inc.*, 921 S.W.2d 254, 260 (Tex.App.-Houston [1st Dist.] 1995), *modified on other grounds & remanded*, 962 S.W.2d 507 (Tex.1998). The main concern is whether the cases share the same nucleus of operative facts. *See id.*

 Once Musgrave raised a counterclaim in *Musgrave I* and put himself and his successors in interest in the posture of a plaintiff, he was required by both res judicata and TEX.R. CIV. P. 97(a) to bring all mature causes of action arising from the same set of facts and circumstances. *See Dennis v. First State Bank*, 989 S.W.2d 22, 26 (Tex.App.-Fort Worth 1998, no pet.); *Amstadt*, 919 S.W.2d at 652–53 (The doctrine of res judicata creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit. People can be in privity in at least three ways: 1) they can control an action even if they are not parties to it; 2) their interests can be represented by a party to the action; or 3) they can be successors in interest, deriving their claims through a party to the prior action.). While Pinebrook acknowledges that *Musgrave I* and Musgrave III involve the same real property, the same restrictive covenants, and parties who, though not identical, are similarly situated, it contends the claims in Musgrave III do not arise from the same transaction as those claims raised in *Musgrave I*.

Where the claims arise from the same accident or seek to recover for the same injuries, they have been found to share the same nucleus of operative facts despite the fact that one claim may require proof of facts not required for the other claim. *See Getty Oil Co.,* 845 S.W.2d at 802 (involved same transaction as suit arising from same accident, involved same contract provision, and sought same relief as claims in prior action); *S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 467 (Tex.App.-Corpus Christi 2000, no pet.) (both contract and *Stowers*[3] claims should have been brought together because both involved same accident and a claim for compensation, requiring only additional showing of negligence for not settling within policy limits).

■■■■ Where there is a legal relationship, such as under a lease, a contract, or a marriage, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata. *See Weiman v. Addicks–Fairbanks Road Sand Co.,* 846 S.W.2d 414, 419 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (core facts common to all claims regarding continued operation of landfill after lease expired; combining claims would be consistent with achieving comprehensive conclusion to business relationship); *see also Twyman v. Twyman,* 855 S.W.2d 619, 625 (Tex.1993) (resolving both tort and divorce actions in same proceeding avoids two trials based at least in part on same facts; settles in one suit "all matters existing between the parties"); *Robinson v. Garcia,* 5 S.W.3d 348, 350–51 (Tex.App.-Corpus Christi 1999, pet. denied) (both claims should have been tried together as they arose from representation in same case, although distinct injuries and improper conduct were alleged); *but see In re*

*J.G.W.,* 54 S.W.3d 826, 833 (Tex.App.-Texarkana 2001, no pet.) (tort claims for personal injury that could have been brought in divorce-custody suit, but were not essentially connected to that action and would only be incidental to the main objective of the court, to determine the best interests of children, not barred by res judicata). Where claims arise at different times through separate transactions not made in the context of a continuing legal relationship, res judicata may not apply, even where the parties and subject matter of the transactions are the same. *See Tex. Beef Cattle Co. v. Green,* 860 S.W.2d 722, 724 (Tex.App.-Amarillo 1993, writ denied) (involving cattle transactions).

Pinebrook contends the trial court erred in applying res judicata because the claims it brought in Musgrave III did not arise from the same transaction, because they would not have been a convenient trial unit in *Musgrave I,* and because they could not have been litigated in that suit through the exercise of diligence. However, we already determined in *Musgrave II* that the subdivision's restrictive covenant constituted a legal relationship between Musgrave, his successors in interest, and the lot owners. *Musgrave v. Owen,* 67 S.W.3d at 520. We found any claim arising from that relationship arises from the same subject matter. *Id.* Musgrave's claims in *Musgrave I* involved the denial of the existence of obligations under the restrictive covenant, and the determination of the rights of the parties under the restrictive covenant, with respect to allowing guests to use the property, timbering, and maintaining a water line. Pinebrook's claims in Musgrave III also seek to determine the rights of the parties under the restrictive covenant. As we have already held in *Musgrave II,* be-

3. *G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved).

cause all the claims relate to the restrictive covenant, they arise from the same subject matter and should have been brought in the same action if they were mature at that time. *Id.*

■■ Pinebrook contends, as Musgrave did in *Musgrave II*, that the claims presented in Musgrave III would not have formed a convenient trial unit with the claims in *Musgrave I* because they would not have been necessary had Musgrave prevailed on his initial defense that he owed no affirmative duties to the lot owners. This argument fails because the contingent nature of claims does not preclude the operation of res judicata. *See Getty Oil Co.,* 845 S.W.2d at 799 (relying in part on TEX.R. CIV. P. 51(b), which permits joinder of two claims even when one of the claims is dependent on disposition of other); *Musgrave v. Owen,* 67 S.W.3d at 521. Because the claims arose from the same transaction and could have formed a convenient trial unit, we affirm the trial court's judgment.[4]

Pinebrook contends in its second point of error that the trial court erred in finding Pinebrook Properties and Pinebrook Management are alter egos of Musgrave, and judgment should not have been granted against Musgrave individually. Pinebrook contends the standard of review for all its remaining points of error is abuse of discretion. However, in this second point of error, Pinebrook is challenging the trial court's finding of fact that Pinebrook Properties and Pinebrook Management are the alter egos of Musgrave. Findings of fact in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991).

The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *In re Davis,* 30 S.W.3d 609, 613 (Tex.App.-Texarkana 2000, no pet.); *Arena v. Arena,* 822 S.W.2d 645, 650 (Tex. App.-Fort Worth 1991, no writ).

When deciding legal sufficiency, in determining whether there is no evidence of probative force to support a jury's finding, we must consider all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). In this review, we disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). A no evidence point will be sustained when 1) there is a complete absence of evidence of a vital fact, 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, 3) the evidence offered to prove a vital fact is no more than a mere scintilla, or 4) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998).

More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Burroughs*

---

4. Pinebrook does not contend in its brief that these claims were not mature at the time of *Musgrave I,* only that they do not arise from the same transaction and do not form a con- venient trial unit, and fails to direct us to any evidence regarding maturity. We therefore do not review the issue of the maturity of the claims brought by Pinebrook in Musgrave III.

*Wellcome Co.,* 907 S.W.2d at 499. If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust.

■■■ Alter ego is a basis for disregarding the corporate fiction. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex. 1986). It applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* (citing *First Nat'l Bank v. Gamble,* 134 Tex. 112, 132 S.W.2d 100, 103 (1939)). Alter ego "is shown from the total dealings of the corporation and the individual, including the degree to which . . . corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry,* 721 S.W.2d at 272; *Hall v. Timmons,* 987 S.W.2d 248, 250 (Tex.App.-Beaumont 1999, no pet.). Failure to comply with corporate formalities is no longer a factor in considering whether alter ego exists. TEX. BUS. CORP. ACT ANN. art. 2.21(A)(3) (Vernon Supp.2002); *see Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.,* 28 S.W.3d 64, 67 (Tex.App.-Texarkana 2000, no pet.).

Pinebrook Properties, Ltd., a Texas limited partnership, owns the lake, dam, roadways, and recreational areas at issue in this case. Pinebrook Properties Management, L.L.C., a Texas limited liability company, is the general partner of Pinebrook Properties. Musgrave is the president and general managing partner of Pinebrook Management.

■■■ The trial court erred in its application of law. The theory of alter ego, or piercing the corporate veil, is inapplicable to partnerships. Under traditional general partnership law, each partner is liable jointly and severally for the liabilities of the partnership. The Texas Legislature has altered this general scheme and statutorily created limited partnerships which are governed by the Texas Revised Limited Partnership Act (TRLPA). TEX.REV. CIV. STAT. ANN. art. 6132a 1, § 1.01, et seq. (Vernon Supp.2002). Under TRLPA, "a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners." TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 4.03(b). Under the Texas Revised Partnership Act, "all partners are liable jointly and severally for all debts and obligations of the partnership. . . ." TEX.REV.CIV. STAT. ANN. art. 6132b–3.04 (Vernon Supp.2002). Therefore, in a limited partnership, the general partner is always liable for the debts and obligations of the partnership. Limited partners are not liable for the obligations of a limited partnership unless the limited partner is also a general partner or, in addition to the exercise of the limited partner's rights and powers as a limited partner, the limited partner participates in the control of the business. However, if the limited partner does participate in the control of the business, the limited partner is liable only to persons who transact business with the limited partnership reasonably believing, based on the limited partner's conduct, that the limited partner is a general partner. TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 3.03(a).

■■■ Under corporation law, officers and shareholders are not liable for the actions of the corporation absent an independent duty. *Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex.1996). Because officers and shareholders may not be held liable for the actions of the corporation,

the theory of alter ego is used to pierce the corporate veil so the injured party might recover from an officer or shareholder who is otherwise protected by the corporate structure. Alter ego is inapplicable with regard to a partnership because there is no veil that needs piercing, even when dealing with a limited partnership, because the general partner is always liable for the debts and obligations of the partnership to third parties. The trial court erred in finding Pinebrook Properties is the alter ego of Musgrave.

Having determined Pinebrook Properties cannot be the alter ego of Musgrave, we now turn to the trial court's finding that Pinebrook Management, which is a limited liability company, is the alter ego of Musgrave. A limited liability company is any company organized and in existence in conformity with the Texas Limited Liability Company Act (TLLCA). TEX.REV. CIV. STAT. ANN. Art. 1528n, art. 1.02(A)(3) (Vernon 1997). The Texas Legislature's enactment of the TLLCA created a new business entity, the limited liability company. A limited liability company is a separate and distinct entity from other types of business entities already in existence in Texas, such as the corporation or the limited partnership. "Except as and to the extent the regulations specifically provide otherwise, a member or manager is not liable for the debts, obligations or liabilities of a limited liability company including under a judgment decree, or order of a court." TEX.REV.CIV. STAT. ANN. Art. 1528n, art. 4.03(A) (Vernon 1997).

 In determining if there is evidence legally sufficient to support the trial court's finding, we look to see if there is such unity between Musgrave and Pinebrook Management that the separateness has ceased to exist, and whether holding only Pinebrook Management liable, as the general partner of Pinebrook Properties,

would result in injustice. *See Castleberry,* 721 S.W.2d at 272. We must look to the relationship between Musgrave and Pinebrook Management to see if alter ego is shown from the total dealings of Musgrave and Pinebrook Management—for example, if the corporate and individual properties have been kept separate; the amount of financial interest, ownership, and control the individual maintains over the corporation; and whether the corporation has been used for personal purposes. *See id.* The evidence of alter ego between Musgrave and Pinebrook Management presented by the Owners is that Pinebrook Management had no checking account, had not filed a tax return, and that Musgrave sent a letter to the lot owners, signing his own name and not designating that he signed it in any other capacity. However, the Owners failed to cite any authority holding that failure to have a checking account, or failure to file tax returns, establishes alter ego. There is no evidence provided that Musgrave commingled funds or that his assets and those of Pinebrook Management were not kept separate. The evidence clearly shows Pinebrook Management has never had the need, or been required, to file a tax return. This is no evidence that Pinebrook is the alter ego of Musgrave.

The Owners also rely on a letter signed by Musgrave after he transferred the property to Pinebrook Properties which denied reimbursement for expenditures. They contend this letter shows alter ego and Musgrave's disregard for the corporate structure. However, failing to sign the letter with "president," or putting the corporate name on the letter, is a corporate formality. Failure to comply with corporate formalities is no longer considered in determining alter ego and is therefore no evidence of alter ego. TEX. BUS.

CORP. ACT ANN. art. 2.21(A)(3); *Aluminum Chems. (Bolivia), Inc.,* 28 S.W.3d at 67.

The Owners contend Musgrave testified that Pinebrook Properties' and Pinebrook Management's only sources of income are derived from contributions or loans made by Musgrave. A review of Musgrave's testimony reveals neither Pinebrook Properties nor Pinebrook Management have any sources of income. Musgrave specifically testified there has never been any money flowing through Pinebrook Management. The only money expended on Pinebrook Management by Musgrave shown by the evidence is that he paid to have it incorporated. Musgrave has never received any funds from Pinebrook Properties or Pinebrook Management. There is evidence that Musgrave lent money to Pinebrook Properties via written open notes payable on demand. However, this is no evidence of the relationship between Musgrave and Pinebrook Management, or that their funds are commingled, or that Musgrave has disregarded the corporate structure of Pinebrook Management in any way.

The final evidence on which the Owners rely is Musgrave's testimony at trial: "Well, I own the property. I pay taxes on the property." The Owners contend this statement shows Musgrave disregarded the separation of the corporate enterprise. The context of this statement is as follows:

Q. You are objecting to the property owners association making any rules or regulations regarding that lake, correct?

A. Not any.

Q. Well, what does the word "exclusive" mean to you?

A. Well, I own the property. I pay taxes on the property. Their exclusive rights are for use of the lake and the recreational property for hunting and fishing. Beyond that, they don't have the rights to set rules and regulations.

Although Musgrave did make the statement on which the Owners rely, based on the context in which it was made, we conclude it is no more than a scintilla of evidence that Musgrave disregarded the corporate structure or enterprise.

The evidence reveals Musgrave is not the sole manager of Pinebrook Management. There are two other managers involved, Bill Ragsdale and Billy Boles. Finally, there is no evidence that Musgrave used Pinebrook Management for personal purposes.

The Owners stated at oral argument that Musgrave transferred the land to Pinebrook Properties after suit was filed against him, suggesting that Pinebrook Properties and Pinebrook Management were created fraudulently. However, the Owners did not plead fraud or that Pinebrook Properties or Pinebrook Management were created in violation of law. The Owners, in their pleadings, rely solely on alter ego as the basis for Musgrave's liability.

The trial court erred in finding that Pinebrook Properties, a limited partnership, is the alter ego of Musgrave, and there is no evidence to support the trial court's finding that Pinebrook Management is the alter ego of Musgrave. Because the Owners, in their pleadings and trial strategy, relied on attaching individual liability to Musgrave solely on the theory of alter ego, we reverse the judgment as to Musgrave and render judgment that the Owners take nothing against him.

In its third point of error, Pinebrook contends the Brookhaven Property Owners Association may not recover in the capacity in which it sued. Pinebrook contends the Association does not meet the definition of "property owners' association" under the Texas Property Code. *See* TEX. PROP.CODE ANN. § 202.001 (Vernon 1995).

They also complain the Association lacked the authority to file the counterclaim representing the lot owners. Pinebrook contends, because the Association lacked the authority to file the counterclaim, it may not recover in the capacity in which it sued.

The evidence conclusively shows the Association is a lot owner in its own right. The Association owns a lot on North Shore. The Association did not designate the capacity in which it brought suit, whether on behalf of its members or as a lot owner. The trial court therefore did not err in finding the Association had the right to recover.

In its fourth point of error, Pinebrook contends the trial court abused its discretion by concluding that it did not have the right to regulate the lake, roadways, and recreational property, and that the Association does have such right. With respect to the land owned by Pinebrook Properties and subject to a restrictive covenant in favor of the lot owners, the trial court found the Association is entitled and has authority to promulgate and enforce rules which protect the property owners' exclusive rights to the use and enjoyment of the lakes, dam, roadways, and recreational areas. The trial court therefore ordered Pinebrook permanently enjoined from promulgating rules and regulations regarding the subdivision which would interfere with the lot owners' exclusive rights, along with other specific injunctions, as previously stated, relating to Pinebrook's property.

Pinebrook contends the trial court erred because Pinebrook is the fee simple owner of the land in question and that fee simple absolute conveys the full panoply of rights in real property. *Calhoun v. Killian,* 888 S.W.2d 51, 55 (Tex.App.-Tyler 1994, writ denied). According to Pinebrook, the lot owners' exclusive rights to hunt, fish, and recreate on the lake and recreational property, and to come and go over the roadways, does not diminish Pinebrook's right to regulate its property, so long as the regulations do not interfere with those rights of recreation and ingress and egress.

Although Pinebrook owns the land in fee simple, the land is subject to the restrictive covenant in favor of the lot owners, giving the lot owners an interest and legal right in the land. Pinebrook did not receive the full panoply of rights when it purchased its land. The lot owners have exclusive rights to the use and enjoyment of the lake, dam, and recreational areas. However, just because Pinebrook does not own the entire bundle of sticks does not mean it does not have the right to regulate the property. There is no evidence to show Pinebrook, or any of its predecessors, gave away its right to regulate. In 1968, the original owners of the property executed and filed in the county clerk's office of Wood County a document entitled "Declaration of Restrictive Use." This document expressly states:

No use shall ever be made of the lands described in "Exhibit A" attached hereto, which will ever interfere with the rights and privileges of the owners of lots in the addition designated as Brookhaven-In-The-Pines to use such lands for hunting, fishing and recreation; subject at all times to reasonable regulation by us to insure the safety, sanitation and pleasure of the greatest number of such lot owners.

In this document, Pinebrook Properties' predecessors explicitly reserved the right to make regulations to ensure the safety, sanitation, and pleasure of the greatest number of lot owners. This is a right expressly reserved, and the trial court erred in holding Pinebrook had no right to regulate the lake, dam, roadways, or recreational areas.

■ As we stated in *Musgrave I*, "[a] purchaser is charged with knowledge of the provisions and contents of recorded instruments." *Musgrave*, 990 S.W.2d at 396; *Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570, 575 (Tex.App.-Houston [1st Dist.] 1996, writ denied). The "Declaration of Restrictive Use" is on file in the Wood County records and has been used in previous lawsuits to define the burdens generated on the landowners and the benefits granted to the lot owners. The trial court's declaratory judgment that Pinebrook has no control over the lake and recreational areas located in the Brookhaven in the Pines subdivision, and is without authority to promulgate rules and regulations regarding the lake and property located in the Brookhaven in the Pines subdivision, is contrary to the "Declaration of Restrictive Use." This document specifically outlines and reserves for Pinebrook the right to make reasonable regulations to "insure the safety, sanitation and pleasure of the greatest number of such lot owners." The trial court's holding takes away Pinebrook's expressly reserved right to regulate. Pinebrook's contention is sustained.

In its fifth point of error, Pinebrook contends the trial court should not have found that Musgrave made an implied dedication of a recently constructed roadway on property which is not contained within the Brookhaven in the Pines Addition. Pinebrook contends Musgrave, the owner of the roadway, should be free to leave the roadway open or closed because it was not part of the original subdivision and was not dedicated to public use.

In its findings of fact, the trial court found that any roadway impliedly dedicated as a public roadway shall remain open to the public and the lot owners, and that such roadways include, but are not limited to, all existing roadways located in the subdivision, and further that the lot owners of the subdivision, as well as the public, are entitled to and shall have a prescriptive easement as to the said roadways. The trial court erred in making this finding.

■ The finding of an implied dedication results in the appropriation of private property for public use without any compensation to the landowner and is thus disfavored in law as contrary to Article I, § 17 of the Texas Constitution. *See Scott v. Cannon*, 959 S.W.2d 712, 718 n. 6 (Tex. App.-Austin 1998, pet. denied); *County of Real v. Hafley*, 873 S.W.2d 725, 728 (Tex. App.-San Antonio 1994, writ denied); *see also* TEX. CONST. art. I, § 17.

■ The theory of implied dedication rests on the presumption of an intent by the landowner to devote the landowner's property to public use. *Medina Lake Prot. Ass'n v. Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1*, 656 S.W.2d 91, 94 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.). Under the common law, an owner of private property could either expressly or impliedly make known his intention to dedicate.[5] *Moody v. White*, 593 S.W.2d 372, 378 (Tex.Civ.App.-Corpus Christi 1979, no writ). In 1981, the Texas Legislature changed the common law and abolished the theory of implied dedication of roads to

---

5. Implied dedication is sometimes referred to in Texas as "common-law dedication" or "dedication by estoppel." *See, e.g., Greenway Parks Home Owners Ass'n v. City of Dallas*, 159 Tex. 46, 312 S.W.2d 235, 241 (1958); *Roberts v. Allison*, 836 S.W.2d 185, 189 (Tex. App.-Tyler 1992, writ denied); *Barstow v. State*, 742 S.W.2d 495, 504 (Tex.App.-Austin 1987, writ denied); *Poindexter v. Schaffner*, 162 S.W. 22, 23 (Tex.Civ.App.-Dallas 1913, no writ).

public use in counties with a population of 50,000 or less, effective August 31, 1981. Act of May 31, 1981, 67th Leg., R.S., ch. 613, 1981 Tex. Gen. Laws 2412–13, *amended by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1195–96.[6] This statute acts prospectively and does not affect roads impliedly dedicated to public use before the effective date. *Lindner v. Hill,* 673 S.W.2d 611, 615 (Tex.App.-San Antonio 1984), *aff'd,* 691 S.W.2d 590 (Tex.1985).

We take judicial notice under Tex.R. Evid. 201 that Wood County, where the roadways are located, has a population of 36,752 people according to the 2000 census. Because Wood County has a population of less than 50,000, the only way a roadway may be dedicated to public use is through an express dedication. "An oral dedication or intent to dedicate by overt act is not sufficient to establish a public interest in a private road under this chapter." Tex. Transp. Code Ann. § 281.003(b) (Vernon 1999). Because there is no evidence presented that the roadways in the Brookhaven in the Pines Addition, or accessing the addition, were impliedly dedicated to public use before August 31, 1981, the trial court erred in finding these roadways were impliedly dedicated to public use. We reverse the trial court's finding regarding the implied dedication to public use of the roadways.

In Pinebrook's sixth point of error, it contends the trial court erred in awarding damages to the Association for repairs made to the roadways. Because of our holding regarding alter ego, we sustain Pinebrook's sixth point and reverse the judgment against Musgrave. Because

Musgrave was the only one against whom judgment was rendered for damages, this part of the judgment is reversed and rendered.

Pinebrook, in its seventh point of error, contends the injunctions entered by the trial court are void on their face. Pinebrook contends no injunction contained in the trial court's judgment included any of the reasons any injury would be suffered, rendering all of them void, and all injunctive relief in the judgment should be reversed for that reason alone.

Rule 683 provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Tex.R. Civ. P. 683. Rule 683 requires the injunction set forth the reasons for its issuance, and, as stated in Pinebrook's brief, does not require "reasons any injury would be suffered." The trial court entered findings of fact and conclusions of law, and specifically stated it granted the injunctive relief because:

> The Court finds that Defendants have no adequate remedy at law for the losses injuries, both actual and threatened and that such injuries and losses are

6. To the extent we stated in *Graff v. Whittle,* 947 S.W.2d 629, 635 (Tex.App.-Texarkana 1997, writ denied), that the effective date of Tex.Rev.Civ. Stat. Ann. art. 6812h, § 4 was September 1, 1985, we were incorrect. September 1, 1985, was the effective date of the amendments to the statute. Act of May 27, 1985, 69th Leg., R.S., ch. 509, 1985 Tex. Gen. Laws 2099.

continuing and irreparable. The Court further finds that the rights involved are unique and irreplaceable, so that it is impossible to accurately measure, in monetary terms, the damages caused and to be caused by the Plaintiff's conduct and that the losses to the Defendants from Plaintiff's conduct are likely to exceed the financial worth of the Plaintiff, so as to prevent any adequate compensation to Defendant, even if money damages were a sufficient remedy. As such, the Court finds that Plaintiff is entitled to the following injunctive relief: . . . .

We find the trial court complied with Rule 683, and the injunctions are not void on their face.

Pinebrook further complains about the trial court's injunctions preventing the replacement of garbage dumpsters, allowing wake-producing watercraft on the lake, installing speed control bumps, lowering the level of the lake, and promulgating rules for regulation of the property. Pinebrook contends all these injunctions interfere with its right to reasonably regulate its property for safety, sanitation, and the pleasure of the majority of the lot owners, and there is no evidence any of these actions would interfere with the lot owners' rights to recreate.

■■■ A successful applicant for injunctive relief must demonstrate the following four grounds for relief: 1) the existence of a wrongful act; 2) the existence of imminent harm; 3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law. *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 881 (Tex.App.-Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex.1983). In an appeal from a permanent injunction, the standard of review is whether the trial court committed a clear abuse of discretion. *Priest v. Tex. Animal Health*

*Comm'n*, 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ).

■■■ We first review the trial court's injunction enjoining Pinebrook from interfering with the replacement dumpsters at the garbage collection site on Pinebrook's property. Although the Owners sought this relief in their pleadings, they presented no evidence at trial regarding the garbage dumpsters. There is no evidence of a wrongful act, the existence of imminent harm, irreparable injury, or the absence of an adequate remedy at law regarding the garbage dumpsters. Absent any evidence, the trial court abused its discretion in issuing a permanent injunction regarding garbage dumpsters.

■■■ Pinebrook next attacks the permanent injunction enjoining Pinebrook from allowing wake-producing watercraft and recreational vehicles to be used by lot owners, and guests of the lot owners, on the recreational property, roadways, lake, and dam. The only evidence presented regarding recreational vehicles on the recreational property or roadways was that lot owners use four-wheelers "and the like" in such areas. There is no evidence of imminent harm or irreparable injury caused by the use of these vehicles. Neither is there evidence of the absence of an adequate remedy at law. Regarding wake-producing watercraft, none of the evidence showed imminent harm to the rights of the lot owners to fish or recreate, or that an irreparable injury has occurred. Under the "Description of Restrictive Use," Pinebrook Properties has a limited sphere in which it may regulate its property. Absent a showing that wake-producing watercraft or recreational vehicles endanger safety, or that the majority of the lot owners want to restrict their use, Pinebrook is under no obligation to promulgate rules. The only evidence presented con-

cerning recreational or wake-producing vehicles on the lake was the opinion of one lot owner that Pinebrook's attempts to allow 125–horsepower boats on the lake has impaired the lot owners' enjoyment of the lake. There is no evidence as to the percentage of lot owners who want or do not want wake-producing or recreational vehicles on the lake or land, or that such vehicles pose a safety risk. The trial court erred in enjoining Pinebrook from allowing wake-producing watercraft or recreational vehicles on its property.

■ With regard to the speed bumps, the Owners pled that the speed bumps were installed without any expert advice and that they are a hindrance and do not improve the safety of the property owners. The evidence presented at trial specifically deals with speed bumps located on Brookhaven Retreat property, which is land owned individually by Musgrave, and we have held that Musgrave has no individual liability. Further, there is no evidence Pinebrook Properties has placed speed bumps on the property it owns and controls. There is also no evidence that Pinebrook Properties or Pinebrook Management plan to install speed bumps. Finding no evidence of a wrongful act by Musgrave individually, Pinebrook Properties, or Pinebrook Management, we reverse the injunction prohibiting speed bumps and ordering their removal.

■ The trial court also enjoined Pinebrook from lowering the level of the lake without consulting the Association first. In their pleadings, the Owners contended Pinebrook lowered the lake before spawning season, thereby jeopardizing the viability of the spawn. They also contend the lowered lake level created a greater fire threat to the lot owners. We have specifically held that Pinebrook has a duty to maintain the lake. According to the testi-

mony, part of lake maintenance is to lower the level of the lake at times.

According to the expert testimony, there are two reasons for lowering the level of the lake: 1) to control shoreline vegetation; and 2) to control the population of forage fish. Dr. Joe T. Lock, whom the Association retained to give advice regarding lake management, testified he did not recommend lowering the lake. This was because he understood the lowering was not scheduled until February, which he thought was too late because the lake level needed to be raised by March. Lock testified there was not enough shoreline vegetation to warrant a draw-down of the lake in July 2000. A letter sent to the lot owners from Pinebrook stated that an expert had been hired regarding the lake and that it planned to lower the lake in January 2000. The letter explained that the draw-down would take seven days and that the lake would be back to its normal level in three weeks. The evidence shows Pinebrook did lower the level of the lake in January 2000. There is no evidence Pinebrook lowered the lake after that. Further, there was no evidence the lake did not need to be drawn down at that time or that any harm resulted from the draw-down. The Owners presented no more than a scintilla of evidence that the lake was or would be harmed by the maintenance actions taken by Pinebrook. The only evidence presented regarding harm was a former Association president's statement that he thought the fish looked more emaciated after the draw-down. Although the Owners pled that lowering the level of the lake would harm spawning and increase the risk of fire, no evidence was presented that either consequence occurred. Because there was no evidence of harm or irreparable injury, we find the trial court abused its discretion in enjoining the lowering of the lake level.

Having found the trial court erred in declaring that Pinebrook has no right to promulgate rules for regulation of the property, we reverse the trial court's judgment enjoining Pinebrook from regulating the property. As previously stated, Pinebrook's predecessors in interest specifically reserved the right to regulate, in limited circumstances. There is no evidence that any rules promulgated by Pinebrook have caused harm by restricting the lot owners' exclusive rights to fish, hunt, and recreate on the land, or that Pinebrook plans to promulgate any rules or regulations in violation of the "Description of Restrictive Use."

Having found the trial court erred in finding an implied dedication of roadways to public use, we reverse the injunction prohibiting the closure of any roadway in the subdivision. Because the injunction regarding the roadways was ancillary to a finding of dedication to public use, and there is no evidence that Pinebrook Properties or Pinebrook Management attempted to close any roadways on Pinebrook Properties' land, we reverse the injunction.

The trial court's injunction preventing Pinebrook Properties or Pinebrook Management from promulgating rules and regulations regarding the subdivision was clearly ancillary to the trial court's declaration that neither Pinebrook Properties nor Pinebrook Management has the right to promulgate rules and regulations. Having found Pinebrook Management may promulgate rules and regulations in compliance with its contractual rights as filed in the Wood County records, there is no basis to support this injunction.

Because Pinebrook did not complain of the remaining two injunctions, we affirm the trial court's action in permanently enjoining Pinebrook Management and Pinebrook Properties, Ltd. from: 1) allowing use of the lake and dam to anyone other than lot owners and their accompanied guests, as previously ordered; and 2) interfering with the exclusive rights of lot owners of Brookhaven to use the lake, dam, roadways, and recreational areas.

Because of our holding regarding alter ego, we sustain Pinebrook's eighth point of error that the trial court erred in granting attorney's fees. Since we have held that Musgrave has no individual liability, and since Musgrave was the only party against whom judgment was rendered for attorney's fees and expenses, the judgment for such fees and expenses is reversed and rendered.

In summary, we affirm the trial court's judgment finding that Pinebrook Properties' claims against the Association in the 2000 suit are barred by res judicata and that the Association had capacity to sue. We also affirm the trial court's permanent injunction against Pinebrook Management and Pinebrook Properties, Ltd. enjoining them from allowing use of the lake and dam to anyone other than lot owners and their accompanied guests, and from interfering with the exclusive rights of lot owners of Brookhaven to use the lake, dam, roadways, and recreational areas. All of Pinebrook's other points of error are sustained, and the trial court's judgment on those points is reversed and rendered.

Accordingly, the judgment is affirmed in part and reversed and rendered in part.