Andreas ASSHAUER, et al., Appellants,

v.

WELLS FARGO FOOTHILL, Appellee.

No. 05–07–01284–CV.

Court of Appeals of Texas, Dallas.

July 30, 2008.

Rehearing Overruled Sept. 30, 2008.

Leif A. Olson, H. Ronald Welsh, John E. Chapoton, Jr., Welsh & Chapoton, L.L.P., Houston, for appellants.

Scott Michael Garelick, Paul B. Lackey, Michael P. Aigen, Kristen A. Miller Reinsch, Lackey Hershman, LLP, Dallas, for appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

This is an appeal from an order dismissing appellee Wells Fargo Foothill ("Wells Fargo") for lack of subject matter jurisdiction. In a single issue, appellants claim the trial court erred in dismissing their case because they lacked standing, and they should be afforded the opportunity to continue their fight to recoup over $4 million they allege Wells Fargo gained through fraud. Wells Fargo responds ap-

pellants lack standing because (1) a limited partner may not directly sue another limited partner when the alleged injuries damaged the limited partnership; (2) appellants have failed to plead and prove Wells Fargo was a general partner for liability purposes; and (3) equity does not allow this Court to manufacture standing when none exists. We affirm.

## Background

Appellants are 238 German nationals and one Colorado resident who allege they were defrauded when they invested in a project known as the Washington Supermall Project. From 1993 to 1997, appellants invested approximately $30 million to Michael Vogelbacher. Vogelbacher structured the Supermall Project as a multi-level limited partnership in which the investors' monies were placed into four limited partnerships known as (1) Washington Supermall Associates, L.P., (2) Washington Supermall Co–Owners, L.P., (3) Washington Supermall Investors, L.P., and (4) Washington Supermall Partners, L.P. (collectively the "WSM Partnerships").[1] These limited partnerships had the sole purpose of placing the equity funds from the investors into the master partnership, Washington Supermall Interests, L.P. The master partnership was the entity that would actually construct and own the Supermall.

Although construction of the Supermall began, it could not be completed with the construction loan provided by the original construction lender. In December 1994, Wells Fargo was asked to provide mezzanine financing to complete the construction.[2] Also effective December 21, 1994, Wells Fargo entered into a Second Amended and Reinstated Limited Partnership Agreement of Washington Supermall Interests, L.P., in which it became a limited partner.

In 1996, Vogelbacher began attempts to sell the project. In 1997, he entered into an agreement with Glimcher Supermall Venture, L.L.C. whereby Glimcher agreed to buy out the majority of WSM Interests in exchange for transfer of the Supermall to a new entity controlled by Glimcher. The proceeds from the sale were distributed to the WSM Partnerships and Wells Fargo, which received $4.9 million. Eventually, Glimcher foreclosed on the project and according to the original investors, their $30 million was a total loss. In September 1998, the Texas Secretary of State dissolved two of the WSM sub-partnerships and another sub-partnership followed in March 1999. The final sub-partnership dissolved in December 2006 after five years without a registered agent in Texas.

Appellants sued claiming Vogelbacher established the entire scheme for the Supermall to defraud investors out of millions. They specifically sued Wells Fargo for fraud in stock and real estate transactions, conspiracy to commit fraud and breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, action for constructive trust, and alter ego/piercing the corporate veil. Wells Fargo filed a plea to the jurisdiction asserting appellants lacked standing to bring suit because they had no separate, individual or distinct injuries from those allegedly suffered by the limited partnerships. The trial court agreed and granted

---

1. Vogelbacher's American limited partnership, Rosche Interests Limited Partnership, was the general partner of all four WSM Partnerships.

2. Mezzanine financing was described as "financing that involved security that … was not the basic real estate property owned by the borrower, so it was subordinate to the construction financing."

the plea to the jurisdiction. It then granted a motion for severance and assigned this case a new cause number separate from their claims with the remaining defendants. This appeal followed.[3]

## Standard of Review and Principles Governing Standing

■ Because standing is a legal question and a component of a court's subject matter jurisdiction, we review de novo a trial court's ruling on a plea to the jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *Robinson v. Neeley*, 192 S.W.3d 904, 907 (Tex.App.-Dallas 2006, no pet.). Standing requirements weed out those lawsuits where the plaintiffs' interests and injuries are not particularized and distinct from those of the general public. *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex.2001); *Robinson*, 192 S.W.3d at 907. The plaintiffs have the burden of alleging facts, if taken as true, affirmatively demonstrating a court's jurisdiction to hear a case. *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 248 (Tex. App.-Dallas 2005, no pet.). We construe the allegations in the pleadings in favor of the pleader. *Id.* at 249.

■ A person has standing if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the defendant's wrongful act; (2) he has a direct relationship between the alleged injury and the claim being adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused him some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter,

as well as his own. *Robinson*, 192 S.W.3d at 907; *Nauslar*, 170 S.W.3d at 249.

■ Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *Id.; Cadle Co. v. Lobingier*, 50 S.W.3d 662, 669–70 (Tex. App.-Fort Worth 2001, pet. denied). Only the person whose primary legal right has been breached may seek redress for an injury. *Nauslar*, 170 S.W.3d at 249; *see also Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976) ("Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit.").

## Discussion

Wells Fargo relies on our opinion in *Nauslar v. Coors Brewing Co.* to support its position that appellants, individually and as limited partners, may not bring suit for injuries belonging to the WSM limited partnerships. *Nauslar*, 170 S.W.3d 242. In that case, the crux of the dispute was the disapproval by Coors Brewing Co. of a proposed consolidation between Willow Distributors and Miller. Nauslar, individually, did not have a direct ownership interest in Willow, the limited partnership; however, Nauslar Investments, L.L.C., which Nauslar owned a 100% interest, was a limited partner in Willow. *Id.* at 247. Nauslar presented a proposed consolidation for Coors approval; however, it rejected the deal and according to Nauslar, caused losses to Willow's value. *Id.* Nauslar and Nauslar Investments, L.L.C. filed suit individually and on behalf of Willow, as a former limited partner, but sought recovery individually and not on Willow's behalf. *Id.* at 248. Nauslar generally argued, similar to appellants here,

---

**3.** We have included only those entities and facts relevant to the standing issue. A more detailed background of the case and other entities involved can be found in *Asshauer v. Farallon Capital Partners, L.P.*, 05–05–01219–

CV, —— S.W.3d ——, ——–——, 2008 WL 367619, *4–5 (Tex.App.-Dallas 2008, no pet.), in which this Court considered an interlocutory appeal of an order granting the special appearances of several defendants.

that he had standing because he was "personally aggrieved" by and suffered direct injury from defendants' actions. *Id.* at 250.

We concluded Nauslar did not have a separate, individual right of action for injuries to the limited partnership that diminished the value of his ownership interest in the entity. *Id.* Willow, as the limited partnership, was the entity who suffered the direct injury from the harm to the limited partnership's worth and any loss to plaintiffs was both "indirect to and duplicative of" the entity's right of action. *Id.* at 251. We concluded by noting "[t]he right of recovery is Willow's alone, even though the economic impact of the alleged wrongdoing may bring about reduced earnings, salary, or bonus." *Id.*

Despite our holding in *Nauslar,* appellants argue the case does not apply to them because *Nauslar* involved a limited partnership operating as an actual business, unlike the sub-partnerships and master partnerships in this case that according to appellants were nothing more than a front to perpetuate Vogelbacher's fraud against the investors. They also argue *Nauslar* only applies when a limited partnership is a pre-existing legal entity that has been in a contractual relationship that is handled wrongfully. We conclude appellant's attempts to distinguish *Nauslar* have no merit.

■ In deciding *Nauslar,* we focused on the injuries suffered directly by the limited partnership; therefore, it was the proper entity to bring suit. Here, appellants similarly allege personal damages for damages properly belonging to the limited partnerships, specifically, a diminution in value of partnership interests or a share of partnership income. Appellants pleaded their investment in the limited partnerships were "squandered" in Vogelbacher's scheme, and defendants' actions "complet-

ed the systematic alienation of the only asset that could reward the individual Plaintiffs' investment, thus making their $30,000,000 investment a total loss," and this "final alienation of Plaintiffs' investment was part of Defendants' overall plan to suck the final few dollars out of Plaintiffs' investment, leaving Plaintiffs with nothing but empty husks of Partnerships." These damages, although cast as personal damages, belong to the limited partnerships. *See, e.g., Nauslar,* 170 S.W.3d at 250 (holding damages belonged to partnership despite Nauslar pleading he was "personally aggrieved" by and suffered "direct damages" from defendants).

Further, we did not reach our conclusion in *Nauslar* because the limited partnership was a pre-existing legal entity that had been in a contractual relationship that was handled wrongfully. Appellants attempts to distinguish the case on this fact creates an exception that does not exist. No court has carved out a "pre-existing business" exception providing standing when it otherwise would not exist. Thus, appellants have failed to overcome controlling authority from this Court. *See, e.g., ExxonMobil Pipeline Co. v. Bell,* 84 S.W.3d 800, 805 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (following precedent from own court regarding issue).

■ Appellants also repeatedly argue that because the limited partnerships were set up to perpetuate a fraud, these partnership entities should be ignored, and they should be allowed to personally sue Wells Fargo. To reach this conclusion, we would be required to ignore the rules of limited partnerships as set out in the Texas Revised Limited Partnership Act. Tex. Rev.Civ. Stat. Ann. art. 6132a–1 (Vernon Supp.2007). Nothing within the Act provides an exception for a limited partner to sue directly another limited partner or the limited partnership when the entities are

allegedly part of a fraudulent scheme. However, we recognize that article 6132a–1, section 3.03(a) provides the following exception when a limited partner acts as a general partner.

> ... [A] limited partner is not liable to the obligations of a limited partnership unless the limited partner is also a general partner or, in addition to the exercise of the limited partner's rights and powers as a limited partner, the limited partner participates in the control of the business. However, if the limited partner does participate in the control of the business, the limited partner is labile only to persons who transact business with the limited partnership reasonably believing, based on the limited partner's conduct, that the limited partner is a general partner.

*Id.* at § 3.03(a). To the extent appellants argue Wells Fargo is a de facto general partner, we conclude they have failed to plead any facts, that taken as true, would establish Wells Fargo acted as a general partner, participated in the control of the business, or that they conducted business with Wells Fargo because they reasonably believed it was a general partner.

We acknowledge appellants filed a supplement to their seventh amended petition after the trial court conditionally granted Wells Fargo's plea to the jurisdiction; however, they still have not pleaded sufficient facts to establish standing.[4] Although they allege certain partnership agreements provided that certain debts, liens, obligations, selling of assets, or entering into mergers could not occur without the approval of Wells Fargo, and these agreements elevated its status from limit-ed partner to general partner, appellants have pleaded no facts establishing Wells Fargo exercised any of these powers. Further, appellants admit in their brief they have conducted no direct discovery on the extent of Wells Fargo's involvement in running the master and sub-partnerships. "All the Plaintiffs know and can show to the Court is the extraordinary power that the Partnership Agreement gave [Wells Fargo]" and the presumption that they exercised such power. We refuse to indulge in such presumptions. Standing, as a component of subject matter jurisdiction, cannot be presumed, and the burden of alleging facts affirmatively showing the trial court's subject matter jurisdiction lies squarely with appellants. *See Bowles v. Wade,* 913 S.W.2d 644, 649 (Tex.App.-Dallas 1995, pet. denied), *abrogated on other grounds by Essenburg v. Dallas County,* 988 S.W.2d 188 (Tex.1998). They have failed to meet their burden. Thus, any arguments claiming Wells Fargo acted as a general partner fail.

Finally, appellants urge that the tenants of equity prohibiting corporate forms from perpetuating frauds likewise prohibit Wells Fargo from using its limited partner status to perpetuate a fraud. They specifically assert they should be allowed to assert theories of alter ego or piercing of the corporate veil to subject Wells Fargo to liability. They argue that although the limited partnership statute does not specifically allow suits against those who control a sham partnership, just as the corporation act does not, this does not mean those suits are impermissible but rather such suits exist independently of the statute.

---

4. The record shows the trial court coordinator sent an email to appellants' counsel stating "Defendant Wells Fargo Foothill's Plea to the Jurisdiction, taken under advisement May 2, 2007, is conditionally granted subject to Plaintiffs' pleading and/or providing evidence to the Court that Defendant Foothill acted in the capacity of general partner for one of more of the limited partnerships...."

Appellants have not cited a single case in which a court determined a limited partner could personally sue based on the theory of alter ego or piercing of the corporate veil. In fact, the Texarkana Court of Appeals has concluded these theories are inapplicable to limited partnerships. *See Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n,* 77 S.W.3d 487, 499 (Tex.App.-Texarkana 2002, pet. denied); *see also Skidmore Energy, Inc. v. KPMG,* 2004 WL 3019097, at *5 (N.D.Tex.2004) (holding alter ego theory of liability inapplicable because KPMG was not a corporate entity but a limited liability partnership). As the court noted, under traditional partnership law, each partner is liable jointly and severally for the liabilities of the partnership. *Pinebrook Props., Ltd.,* 77 S.W.3d at 499. The legislature altered the general scheme and statutorily created limited partnerships governed by the Texas Revised Limited Partnership Act. Tex.Rev.Civ. Stat. Ann. art. 6132a–1. Under the act, a "general partner of a limited partnership has the liabilities of a partner in a general partnership without limited partners to persons other than the partnership and the other partners." *Id.* § 4.03(b).

Therefore, in a limited partnership, the general partner is always liable for the debts and obligations of the partnership. *Pinebrook Props., Ltd.,* 77 S.W.3d at 499. As such, alter ego or piercing the corporate veil is inapplicable with regard to a partnership because there is no veil that needs piercing, even when dealing with a limited partnership, because the general partner, as noted, is always liable for the debts and obligations of the partnership to third parties. *Id.* at 500.

Thus, we conclude appellants attempts to confer standing on the court by pleading alter ego or corporate veil piercing fail.

Appellants further argue to refuse them standing to pursue their claims will result in an incurable injustice and provide a roadmap for other "fraudsters" to entice other unsuspecting investors into a scheme that defrauds them of millions. Although appellants' allegations, if true, may amount to an egregious tale of mismanagement or deception, we refuse to alter the clear language of the limited partnership act and case law to afford them standing to sue. They acknowledge in their brief that "in theory" they could have sued derivatively to get authorization to sue on behalf of the limited partnerships; however, because they claim everyone was involved in the fraud, this would be a waste of time and energy. Although that may be true, the act clearly provides for a derivative suit and makes no exceptions for the difficulty of pursuing that option. *See* Tex. Rev.Civ. Stat. Ann. art. 6132a–1 §§ 10.01–.05. Thus, we overrule appellants' sole issue.

### Conclusion

After considering appellants' arguments, we conclude the trial court properly granted Wells Fargo's plea to the jurisdiction because appellants failed to plead facts establishing standing to sue. We affirm the trial court's order.