Michael H. HALL and Emajean Haggard Hall, Trustee, Appellants,

v.

James R. DOUGLAS, Jr., Barbara Douglas, Douglas Properties, Inc., Douglas/Hall, Ltd., Douglas Properties/Development, Inc., and Graham Mortgage Corporation, Appellees.

No. 05–10–01102–CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 2012.

Jeffrey M. Travis, Richard J. Pradarits, Travis & Calhoun, P.C., Dallas, TX, Hastings Lyle Hanshaw, Collin D. Kennedy, Hanshaw Kennedy, LLP, Frisco, TX, for Appellants.

Luke Madole, Timothy Patrick Chastain, Thomas F. Allen, Jr., Carrington, Coleman, Sloman & Blumenthal, L.L.P., Richard Illmer, Brown, McCarroll, L.L.P., Dallas, TX, Elizabeth G. Bloch, Brown, McCarroll, L.L.P., Austin, TX, for Appellees.

Before Justices BRIDGES, FRANCIS, and LANG.

## OPINION

Opinion By Justice BRIDGES.

Appellants Michael H. Hall ("Hall") and Emajean Haggard Hall (the "Trustee") appeal from the trial court's order granting summary judgment in favor of appellees James R. Douglas, Jr., Barbara Douglas, Douglas Properties, Inc., Douglas/Hall, Ltd., Douglas Properties/Development, Inc. (collectively referred to as the "Douglas Appellees") and Graham Mortgage Corporation ("Graham"). In six issues, appellants argue the trial court erred by granting: (1) Graham's motion for partial summary judgment regarding the Trustee's fraud claim; (2) the Douglas Appellees' no-evidence motion for summary judgment against the Trustee; (3) the Douglas Appellees' no-evidence motion for summary judgment against Hall; (4) the Douglas Appellees' traditional motion for summary judgment against Hall because he had standing to bring his claims; (5) Graham's motion for summary judgment for appellants' remaining claims; and (6) sustaining appellees' objections to the testimony of Hall and Bettie Miller offered in support of appellants' responses to motions for summary judgment. We affirm.

## BACKGROUND

In 2003, appellee Hall[1] entered into an agreement with Douglas Properties, Inc. and James R. Douglas, Jr. to form a limited partnership known as Douglas/Hall, Ltd. ("DHL"). The parties agreed that Douglas Properties, Inc. would be the general partner, owning a one percent interest, and Hall and Douglas would be limited partners, owning 50 and 49 percent interests, respectively. The purpose of the partnership was to "acquire, own, operate, manage, and develop" a 320 acre tract of land in Collin County, Texas (the "Hall

Tract"), owned by the Trustee. Hall was the beneficiary of the trust under which the land was being held. The DHL partnership agreement contained provisions regarding a "development loan" and contained provisions regarding the general partner's obligation to develop the Hall Tract.

In June 2003, the Trustee sold the Hall Tract to DHL. In connection with its purchase of the Hall Tract from the Trustee, DHL signed a promissory note in the amount of $9,090,335.27 payable to the Trustee. The Trustee's promissory note was secured by a deed of trust on the Hall Tract ("Trustee's Deed of Trust"). In addition, DHL signed a promissory note in the amount of $1.5 million payable to Graham. The note was secured by a deed of trust on the Hall Tract in favor of Graham ("Graham Deed of Trust"). The Trustee's Deed of Trust recites that lien priority belonged to Graham under the Graham Deed of Trust and refers to Graham's lien as a "prior lien."

In 2005, DHL borrowed $3,074,000 from Graham ("2005 Loan"). DHL used a portion of the proceeds of this loan to pay the balance due on the $1.5 million promissory note payable to Graham. As part of this transaction, the Trustee signed a subordination of her lien, providing that her lien would become "second, subordinate, and inferior" to a 2005 deed of trust lien signed by DHL to secure payment of the 2005 Loan.

In November 2006, DHL borrowed another $3.5 million from Graham ("2006 Loan"). This loan was secured by a second deed of trust lien in favor of Graham on the Hall Tract. The Trustee again subordinated her lien. Hall signed a "Consent of Partners" authorizing Douglas Properties, Inc. as general partner of

1. Hall is the Trustee's son.

DHL to undertake actions to complete the loan transaction. The agreements between DHL and Graham for both the 2005 Loan and the 2006 Loan included a provision regarding advances from the loan proceeds. In a paragraph entitled "Future Advances," both agreements provided that advancements could be made to DHL "for the sole purpose of paying the costs (including the payment of accrued interest under the Note) reasonably and necessarily incurred by Borrower in connection with the ownership, operation and development of the Property into single-family residential lots, a minimum of one acre each." The "Property" referred to in this provision was the Hall Tract.

In August 2008, appellants filed this lawsuit against the Douglas Appellees, Graham, and others,[2] alleging fraud in a real estate transaction, common law fraud, conspiracy to defraud, breach of fiduciary duty, and breach of the partnership agreement. Appellants also sought judicial foreclosure of the promissory note payable by DHL to the Trustee and the deed of trust securing that note. Graham then initiated foreclosure proceedings under the deeds of trust securing the 2005 Loan and the 2006 Loan, and appellants filed an application for a temporary injunction against foreclosure, pending trial on the merits. The trial court granted the temporary injunction, and Graham appealed. In *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 474–77 (Tex.App.-Dallas 2010, no pet.), this Court affirmed the trial court's grant of the temporary injunction.

A couple of months later, in April 2010, Graham and the Douglas Appellees filed their motions for summary judgment in the trial court. The Douglas Appellees filed a traditional and no-evidence motion for summary judgment. Graham filed a partial no-evidence motion for summary judgment regarding the Trustee's fraud claims against Graham. The trial court granted both motions. In June of 2010, Graham filed its motion for summary judgment on the remaining claims, and the trial court granted that motion as well. In conjunction with the motions for summary judgment, the trial court also granted many of the objections to and motion to strike portions of appellants' summary judgment evidence.

ANALYSIS

1. Summary Judgment Standard

■ The standards for reviewing a traditional summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Further, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on those grounds alone. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 688 (Tex. App.-Dallas 2000, no pet.).

■ We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX.R. CIV. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12

---

2. The others are not a party to this appeal.

S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Gen. Mills,* 12 S.W.3d at 833. When analyzing no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *Id.*

■ In the present case, the trial court did not specify the grounds on which the Douglas Appellees' summary judgment motion was granted. If a summary judgment order issued by the trial court does not specify the ground or grounds relied upon for a ruling, the ruling will be upheld if any of the grounds in the summary judgment motion can be sustained. *Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999); *Ortega v. City Nat. Bank,* 97 S.W.3d 765, 772 (Tex.App.-Corpus Christi 2003, no pet.). When the motion for summary judgment presents both no-evidence and traditional grounds, appellate courts usually review the no-evidence grounds first. *See Kalyanaram v. Univ. of Tex. Sys.,* 230 S.W.3d 921, 925 (Tex. App.-Dallas 2007, pet. denied).

## 2. The Trustee's Fraud Claim Against Graham

In their first issue, appellants contend the trial court erred in granting Graham's motion for partial summary judgment regarding the Trustee's fraud claim. Specifically, appellants argue the trial court erred in granting summary judgment because "there was evidence that Graham made false statements with the intent that [the Trustee] rely upon them, and there was evidence of [the Trustee's] actual, detrimental reliance on those statements by Graham."

■ The elements of fraud are: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex. 2009). Thus, in their brief, appellants argue they presented at least some evidence with regard to the fourth and fifth elements sufficient to preclude summary judgment.

With regard to the fourth element, appellants contend Graham defrauded the Trustee by representing "in the loan documents themselves" that the loans it was making to DHL were going to be used for the development of the Hall Tract. Appellants argue that, even though Graham knew the loans were not going to be used for development, Graham made these representations to make it appear as though the Trustee was required to subordinate her lien on the Hall Tract to Graham's liens. Under the fifth element, appellants contend there was evidence the Trustee relied on Graham's alleged false statements because "she signed the subordination documents, subordinating her first lien to Graham's liens (as she was legally obligated to do if the loans were truly to be used for the development of the [Hall Tract])." Appellants assert that, from the fact that the Trustee signed the subordination agreements, the trial court should have inferred that the Trustee relied on Graham's statements that the loans would be for the development of the Hall Tract.

### a. 2003 Loan

■■ We first note that appellants, in making their arguments, cite this Court to

the 2005 Loan and the 2006 Loan documents. Although appellants appear to reference a 2003 loan, they have not directed us to a copy of such loan, and we have not found a copy of a 2003 loan within the record.[3] Therefore, we do not know what the 2003 Loan, if any, stated with regard to its purpose (whether for development or otherwise). It is not our duty to wade through a voluminous record to verify appellants' claim. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283 (Tex.1994).

Furthermore, when appellants allege the only evidence of fraud by Graham is contained within the loan document themselves, but there is no loan document to review, there is no evidence of any alleged fraudulent representation with regard to the 2003 loan. Thus, we conclude the trial court properly granted summary judgment on the Trustee's claim for fraud against Graham with regard to the 2003 loan, if any. *See Gen. Mills*, 12 S.W.3d at 833.

**b. 2005 Loan and 2006 Loan**

■ With regard to the 2005 and 2006 Loan documents, we consider the fifth element of the Trustee's claim of fraud—reliance. Although she asserts a claim for fraud against Graham, the Trustee did not testify as to her reliance on Graham's alleged representations. In fact, citing health reasons, the Trustee filed a motion to quash and motion for protective order to prevent the taking of her deposition. The Trustee also failed to attach an affidavit to her response to Graham's partial motion for summary judgment, testifying as to her reliance.

Instead, the Trustee argues on appeal that the fact she signed the subordination documents is evidence she relied on Graham's representations that the loans were to be used for development. Citing *Anderson v. Anderson*, 620 S.W.2d 815 (Tex.Civ.App.-Tyler 1981, no writ), appellants contend "a court can and should infer from the fact that a person signs a document that they relied upon the statements set out in the document."

In *Anderson*, the executed deed at issue stated that it conveyed the property in question "for and in consideration of Altha Miller, my granddaughter, providing for the adequate care and maintenance of me during the remainder of my lifetime." *See id.* at 816–17. The court noted that when Altha had received the deed, the evidence disclosed that she had already decided she could not fulfill and had no intention of performing the support obligation at the time of the execution of the deed. Therefore, the court determined the fact that Anderson executed the deed to her homeplace for the sole consideration of the representation for care and maintenance during her lifetime is evidence of her reliance on such representation. *See id.* at 819.

In the case before us; however, neither of the subordination of lien agreements state they are made in reliance of any representation of development plans made in the 2005 Loan or the 2006 Loan documents. As already noted, the Trustee did not testify as to her reliance on statements made in the loan documents. In addition, with regard to the 2005 Loan, the Trustee subordinated her lien on July 14, 2005. But the 2005 Loan was not executed until July 18, 2005—four days *after* she subordinated her loan. The evidence, thus, seems to indicate she could not have relied on the 2005 Loan (a document which existed at a future time) when she subordinated her

---

**3.** Although the record contains a contract of sale and a 2003 purchase money promissory note between DHL and the Trustee, a 2003 loan agreement between DHL and Graham is not among the documents included in the record.

rights in 2005. Furthermore, although the 2005 Loan and 2006 Loan do contain a reference to development, they also include advances for the purpose of paying costs incurred by DHL "in connection with the ownership, operation *and* development of the [Hall Tract]." (Emphasis added). Thus, development is only one of three enumerated purposes stated within the loan documents. Without more, we cannot conclude the signing of the subordination agreements was evidence the Trustee relied on any representations of development made in the 2005 Loan and 2006 documents. *See Fredonia,* 881 S.W.2d at 283.

Because appellants have failed to provide evidence of reliance, an essential element of fraud, we conclude the trial court properly granted summary judgment on the Trustee's claim for fraud against Graham with regard to the 2005 Loan and the 2006 Loan. *See Gen. Mills,* 12 S.W.3d at 833. We overrule appellants' first issue.

### 3. The Trustee's Fraud Claim Against the Douglas Appellees

In their second issue, appellants contend the trial court erred in granting the Douglas Appellees' motion for summary judgment on the Trustee's fraud claims. Specifically, appellants argue there was sufficient evidence to prove: (1) the subordination agreements, signed by the Trustee, were secured by fraud; (2) common law fraud; (3) fraud in a real estate transaction; and (4) the Douglas Appellees conspired with Graham to defraud the Trustee.

### a. *Fraud as to the Subordination Agreements*

 In their brief, appellants argue Hall relied Douglas's statements to counsel the Trustee to sign the subordination documents. Appellants contend that, when Douglas gave Hall the subordination

agreements, Douglas told Hall the loans were going to be used to develop the Hall Tract even though Douglas had no intention of developing the Hall Tract. Thus, appellants argue the representations to Hall constituted representations to the Trustee, and she relied on them.

 As a general rule, a person making a representation is only accountable for its truth to the person he seeks to influence and no one else has a right to rely on the representation or make a claim based upon its alleged falsity. *See Jefmor, Inc. v. Chicago Title Ins. Co.,* 839 S.W.2d 161, 164 (Tex.App.-Fort Worth 1992, no writ) (citing *Westcliff Co. v. Wall,* 153 Tex. 271, 267 S.W.2d 544, 546 (1954)). As previously noted, the record contains no testimony from the Trustee, and thus no evidence from her with regard to what Hall told her and her alleged reliance on those statements.

Instead, the record contains the testimony of Hall in which he testified that he told the Trustee he "talked to [Douglas], [and that Douglas] was going to use this money towards the development of the property." The record also contains an affidavit from Hall which states Douglas knew that Hall was telling the Trustee the things Douglas said in connection with the Hall Tract. However, these statements do not provide evidence of what Hall told the Trustee or provide evidence of her reliance on those statements.

Still, appellants refer this Court to a statement in Hall's affidavit that if he had known Douglas had no intention of developing the Hall Tract, the Trustee "never would have executed the subordination documents by which she agreed to subordinate her lien...." However, as we discuss more fully with regard to appellants' sixth issue below, mere speculation in an affidavit is insufficient to establish a con-

clusion. *See Ingram v. Deere*, 288 S.W.3d 886, 903 (Tex.2009).

Appellants next rely on *BP America Prod. Co. v. Stanley G. Marshall, Jr., et al.*, 288 S.W.3d 430, 445 (Tex.App.-San Antonio 2009), *rev'd on other grounds*, 342 S.W.3d 59 (Tex.2011) for the proposition that representations made by Douglas to Hall constitute representations to the Trustee upon which she can rely. However, in *BP*, there was evidence one sibling had been given authority to act on behalf of the others. *See BP*, 288 S.W.3d at 445. Thus, the court concluded that representations to the one sibling were effectively representations to the others. *See id.* Here; however, appellants do not cite us to, and we have found no, evidence that the Trustee gave Hall authority to act on her behalf. Again, appellants have failed to provide evidence of an essential element, namely reliance. We, therefore, conclude the trial court properly granted summary judgment in favor of the Douglas Appellees as to the Trustee's claim for fraud under the subordination agreements. *See Gen. Mills*, 12 S.W.3d at 833.

### b. Common Law Fraud

■ Appellants next contend the trial court erred when it found there was no evidence: (a) of common law fraud when there was evidence of misrepresentations made by the Douglas Appellees; (b) of reliance by the Trustee on those representations; and (c) any such representations were the producing cause of harm to the Trustee. Appellants claim the Douglas Appellees committed fraud regarding the development of the Hall Tract. Specifically, appellants cite this Court to evidence which they contend demonstrates fraud, not only in the context of the subordination

agreements, but also in connection with the initial sale of the Hall Tract.[4]

As we have already noted, the elements of common law fraud are: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex*, 297 S.W.3d at 774. With regard to common law fraud, appellants allege there was sufficient evidence as to the second, fifth and sixth elements.

Because we have already concluded there is no evidence of reliance as to the Trustee's claim for fraud under the subordination agreements, and thus an essential element is missing for that claim, we turn to the question of whether there was evidence of fraud in connection with the initial sale of the Hall Tract. In making their argument, appellants assert Douglas met with the Trustee before she sold the Hall Tract, and that "Douglas represented directly to her at that time that he intended to develop the property." Appellants also state that Douglas repeated these representations "over the next several years that he was developing the [Hall Tract]." Appellants conclude, given that the Hall Tract was undeveloped at the time the trial court granted summary judgment, none of the representations were true. We disagree with appellants' analysis.

■ A statement of future performance cannot serve as the basis for fraud unless there was no intention of perform-

---

4. The pages cited as evidence by appellants are pages from the deposition testimony of Hall in which he discusses representations made in connection with the initial sale of the Hall Tract and the subordination agreements.

ing the promise *at the time it was made.* *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1996). In order to prevail, appellants must present evidence that the Douglas Appellees made representations with the intent to deceive and with no intention of performing as represented at the time such representations were made. *See id.* But appellants have not cited us to any evidence, and we have found none, which demonstrates any representations by the Douglas Appellees regarding the development of the Hall Tract prior to the initial sale in 2003 were false. It is not our duty to wade through a voluminous record to verify appellants' claim. *Fredonia,* 881 S.W.2d at 283. Therefore, we conclude there is no evidence the Douglas Appellees made a false statement to the Trustee prior to the initial sale in 2003.

Because evidence of an essential element was missing, the trial court properly granted summary judgment as to the Trustee's claims of common law fraud against the Douglas Appellees. *See Gen. Mills,* 12 S.W.3d at 833.

### c. Fraud in a Real Estate Transaction

In support of their argument, appellants direct this Court to section 27.01(a)(2) of the business and commerce code, which provides:

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

. . .

(2) false promise to do an act, when the false promise is

(A) material;

(B) made with the intention of not fulfilling it;

(C) made to a person for the purpose of inducing that person to enter into a contract; and

(D) relied on by that person in entering into that contract.

Tex. Bus. & Com.Code Ann. § 27.01(a)(2). Appellants argue that, in this case, a false promise was made with the intent of not fulfilling it. They continue, "the false promise was the promise in the loan documents that the loans would be used for the development of the [Hall Tract]."

However, we have already noted that, although the 2005 Loan and 2006 Loan do contain a reference to development, they also include advances for the purpose of paying costs incurred by DHL "in connection with the ownership, operation *and* development of the [Hall Tract]." (Emphasis added). Development is only one of three enumerated purposes stated within the loan documents.

Furthermore, although appellants argue there was evidence that the Douglas Appellees made a false promise without the intent of fulfilling it, appellants have failed to cite us to any evidence in the record to support their position. Again, it has never been a part of an appellate court's duties to, itself, engage in time-consuming review of a voluminous record for evidence. *See Fredonia,* 881 S.W.2d at 283. Because there is no evidence of fraud in a real estate transaction, we conclude the trial court properly granted summary judgment in favor of the Douglas Appellees. *See Gen. Mills,* 12 S.W.3d at 833.

### d. Conspiracy to Defraud

■ Lastly, appellants argue there was evidence that the Douglas Appellees conspired with Graham in order to defraud the Trustee. A civil conspiracy involves a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means. *See*

*Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex.1998). Fraud is the unlawful purpose or means that forms the basis of appellants' conspiracy claim here. Because we have already concluded that the trial court did not err in granting the Douglas Appellees' summary judgment on the Trustee's fraud claim and because the Trustee's conspiracy claim is premised on the Douglas Appellees' alleged fraud, our conclusion on the fraud issue necessarily disposes of the conspiracy claim. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,* 51 S.W.3d 573, 583 (Tex. 2001). Thus, we conclude the trial court correctly granted summary judgment on the Trustee's conspiracy claim. *See id.; Tara Capital Partners, L.L.P. v. Deloitte & Touche, L.L.P.,* No. 05–03–00746–CV, 2004 WL 1119947, *5 (Tex.App.-Dallas May 20, 2004, pet. denied) (mem. op.).

Therefore, based upon the foregoing, we conclude the trial court did not err in granting the Douglas Appellees' motion for summary judgment on the Trustee's fraud claims. *See Gen. Mills,* 12 S.W.3d at 833. We overrule appellants' second issue.

## 4. Hall's Standing to Bring Claims Against the Douglas Appellees

In their third issue, appellants contend the trial court erred in granting the Douglas Appellees' no-evidence motion for summary judgment against Hall as to his individual claims for breach of the partnership agreement and breach of fiduciary duty. Appellants also contend the trial court erred in granting the Douglas Appellees' no-evidence motion for summary judgment as to Hall's claims, brought as a beneficiary, for fraud, fraud in a real estate transaction, and conspiracy to commit fraud. In their fourth issue, appellants argue the trial court erred in granting the Douglas Appellees' traditional motion for summary judgment against Hall because he had

standing to bring his claims. Because these two issues are related, we consider them together.

In a June 16, 2010 letter to the parties, the trial court stated:

> The Court finds that Mike Hall cannot bring these causes of action as a beneficiary of this trust. Further, the Court finds that the partnership claims of Mike Hall are indirect claims. The Court grants Defendants' summary judgment motions against Mike Hall.

Thus, the trial court ruled that Hall lacked standing to bring both his individual claims and his claims as a beneficiary.

### a. Hall's Individual Claims

 We first address whether Hall had standing to bring his individual claims for breach of the partnership agreement and breach of fiduciary duty. Standing is a component of subject-matter jurisdiction, and a plaintiff must have standing to maintain a suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex. 1993); *Spurgeon v. Coan & Elliott,* 180 S.W.3d 593, 597 (Tex.App.-Eastland 2005, no pet.). A person has standing to sue when he is personally aggrieved by the alleged wrong. *See Nootsie Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). A person has standing if (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own. *See Nauslar v. Coors*

*Brewing Co.*, 170 S.W.3d 242, 249 (Tex. App.-Dallas 2005, no pet.).

■ Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *See Asshauer v. Wells Fargo Foothill*, 263 S.W.3d 468, 471 (Tex.App.-Dallas 2008, no pet.); *Nauslar*, 170 S.W.3d at 249. Only the person whose primary legal right has been breached may seek redress for an injury. *See id.*

In their brief, appellants argue DHL misappropriated DHL funds by taking "over $2,000,000 of [DHL] funds to pay [non-DHL] debts." This alleged misappropriation, appellants argue, constitutes a breach of the partnership agreement.

■ To support their argument, appellants cite this Court to section 152.210 of the business organizations code for the proposition that a partner is liable to the partnership and other partners for any breach of the partnership agreement. *See* TEX. BUS. ORG.CODE § 152.210. However, section 152.211 states that "a *partnership* may maintain an action against a partner for breach of the partnership agreement or for the violation of a duty to the partnership causing *harm to the partnership.*" *See id.* at § 152.211(a) (emphasis added). Because Hall argues the Douglas Appellees misappropriated *DHL funds*, we conclude the alleged harm is to DHL, not Hall. *See Asshauer*, 263 S.W.3d at 471–72; *Nauslar*, 170 S.W.3d at 250–51.

■ A limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest. *See Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex.App.-Eastland 2008, pet. denied); *Nauslar*, 170 S.W.3d at 250–51. The right of recovery is DHL's alone, even though the economic impact of the alleged wrongdoing my bring about reduced earnings, salary or bonus.

*See Nauslar*, 170 S.W.3d at 251. These damages, although cast as personal damages, belong to the partnership alone. *See Asshauer*, 263 S.W.3d at 472; *Nauslar*, 170 S.W.3d at 250 (damages belonged to partnership despite pleading he was "personally aggrieved" by and suffered "direct damages" from defendants). Therefore, Hall lacked standing to bring a claim for breach of the partnership agreement. See TEX. BUS. ORG.CODE § 152.211; *Asshauer*, 263 S.W.3d at 472; *Nauslar*, 170 S.W.3d at 250.

■ With regard to Hall's claim for breach of fiduciary duty, appellants argue that "using the [DHL] funds to pay [non-DHL] debts, without the knowledge or consent of the other partners is a breach of … Douglas and Douglas Properties, Inc.'s fiduciary duties for which Mike Hall has a claim individually against Jim Douglas and Douglas Properties, Inc." Appellants attempt to distinguish this case from our decisions in *Asshauer* and *Nauslar* by making the following argument:

> First, Mike Hall is asking for, among other things, disgorgement of the money taken by the Douglas [Appellees] (and Graham) to pay the [non-DHL] loans. These requested damages are very different from seeking to recover for the diminution of Hall's partnership interest. When Douglas took this money from [DHL], he essentially made a distribution to himself and/or Douglas Properties, Inc. without making a pro rata distribution to Mike Hall. In this manner, Mike Hall suffered damages that are different from the damages that [DHL] itself suffered.

However, we conclude these are not true distinctions. Even when cast as "personal damages," claims for "a diminution in value of partnership interests or a share of partnership income" may be asserted only by the partnership itself. *See Asshauer*,

263 S.W.3d at 471–72; *Swank,* 258 S.W.3d at 661.

To distinguish between injuries suffered by a partnership, for which Hall lacks standing, and those suffered directly by Hall, we must focus on the nature of the alleged injury. *See Asshauer,* 263 S.W.3d at 471–72; *Nauslar,* 170 S.W.3d at 248 (first considering the injury asserted). In his brief, Hall claims the injury derived from the Douglas Appellees' use of DHL funds to pay non-DHL loans without the knowledge or consent of the other partners, and these acts amounted to a breach of fiduciary duty. However, we fail to see how Hall was "personally aggrieved" by the alleged payments. Hall did not own the money used to pay non-DHL loans: it was an asset of DHL. Thus, only DHL would have standing to sue to get that money back. *See Nauslar,* 170 S.W.3d at 249–51 (limited partner cannot sue directly for damages suffered by partnership).

Hall also asserts that he suffered damages due to Douglas's alleged wrongful distribution from DHL funds to Douglas and/or Douglas Properties, Inc. without making a pro rata distribution to Hall. However, as a limited partner, Hall cannot sue directly for "distributions, profits, and other benefits" he allegedly lost because of harms suffered by DHL. *Nauslar,* 170 S.W.3d at 248, 250–51.

We, therefore, conclude the "individual" claims alleged by Hall belonged to DHL alone, and Hall lacked standing to bring claims of breach of the partnership agreement and breach of fiduciary duty against the Douglas Appellees. *See Wingate v. Hajdik,* 795 S.W.2d 717, 719 (Tex.1990); *Asshauer,* 263 S.W.3d at 472; *Nauslar,* 170 S.W.3d at 250. The trial court properly granted summary judgment in favor of the Douglas Appellees on these claims. *See Gen. Mills,* 12 S.W.3d at 833.

**b. Hall's Claims Brought as a Beneficiary**

 Appellants also contend the trial court erred in granting the Douglas Appellees' no-evidence motion for summary judgment as to Hall's claims, brought as a beneficiary of the trust, for fraud, fraud in a real estate transaction, and conspiracy to commit fraud. However, in their response to Graham's motion for summary judgment on the remaining claims, appellants concede that "Hall did not bring claims as a beneficiary of the trust." Because Hall failed to bring the claims as a beneficiary to the trial court, he failed to preserve his ability to argue claims as a beneficiary on appeal. *See* TEX.R.APP. P. 33.1; *State Bd. of Ins. v. Westland Film Indus.,* 705 S.W.2d 695, 696 (Tex.1986); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 675 (Tex.1979) (holding issues not expressly presented to trial court may not be considered on appeal as grounds for reversal of summary judgment). We overrule appellants' third issue.

**c. The Douglas Appellees' Traditional Motion for Summary Judgment**

Due to our conclusion that the Douglas Appellees are entitled to no-evidence summary judgment on Hall's claims, we need not determine whether the trial court should have granted their motion for traditional summary judgment. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600–02 (Tex.2004). Therefore, we also overrule appellants's fourth issue.

**5. Appellants' Remaining Claims against Graham**

After the trial court granted the Douglas Appellees' motion for summary judgment and Graham's partial motion for summary judgment, only two claims remained against Graham: conspiracy to defraud and breach of a fiduciary duty. Ap-

pellants argue the trial court erred in granting Graham's subsequent motion for summary judgment on the remaining claims.

Appellants' sole argument with regard to the remaining claims is that "[t]he trial court erred in granting this motion for the simple reason that it erred in granting the motions for summary judgment on the underlying claims for fraud and for breach of fiduciary duty." However, we have already determined the trial court properly granted Graham's partial motion for summary judgment as to appellants' claim for fraud. Because the conspiracy to defraud and breach of fiduciary duty claims were purely derivative of appellants' fraud claim, the trial court properly granted Graham's motion for summary judgment on the remaining claims. *See Ernst & Young*, 51 S.W.3d at 583 (because conspiracy and "aiding and abetting" claims were premised on the alleged fraud, summary judgment on the remaining claims was proper); *see also RTLC AG Products, Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex.App.-Dallas 2006, no pet.) ("Civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.") We overrule appellants' fifth issue.

## 6. Objections to Appellants' Summary Judgment Evidence

In appellants' sixth issue, they contend the trial court erred in sustaining appellees' objections to the testimony of Hall and Bettie Miller offered in support of appellants' responses to motions for summary judgment. Contained within the trial court's order granting Graham's partial motion for summary judgment and the Douglas Appellees' traditional and no-evidence motions for summary judgment, the

trial court sustained "the evidentiary objections urged in the [Graham] Reply and in the [Douglas Appellees'] Reply." The trial court later issued a separate order, in which it also granted and denied specific objections lodged by the Douglas Appellees.

### a. Standard of Review

■ We use the abuse of discretion standard to review a trial court's rulings on objections to admissibility of evidence. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex.2009). The test for abuse of discretion requires us to determine whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex.2010).

### b. Graham's Objections

Appellants first complain of Graham's objection contained within its motion for partial summary judgment and reply. Specifically, appellants complain of Graham's objection "to any and all summary judgment evidence attached to the Response which purports to, and to the extent same attempts to, vary or characterize the contents of [the 2005 Loan and the 2006 Loan] because same is not the best evidence of such contents, is hearsay and violates the parol evidence rule."

■ Appellants argue they never attempted to vary the terms of the loan documents and that the only evidence they presented, not in the loan documents, is the evidence that shows that Graham knew Douglas was using the loan proceeds for something other than the development of the Hall Tract. In support of their statement, appellants cite this Court to two pages (pages 64 and 66) of the deposition of Douglas. But these pages were not attached to appellants' response to Gra-

ham's partial motion for summary judgment. Thus, Graham's objection would not have included those pages, and the trial court did not rule on that evidence. We conclude further review is neither necessary nor allowed. *See One Call Sys., Inc. v. Houston Lighting & Power*, 936 S.W.2d 673, 677 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (holding adverse ruling is required to preserve issue on appeal).

■ Appellants next complain of Graham's statement that "all of Ms. Miller's testimony about why [the Trustee] signed documents is objectionable as speculation into the mind of another, hearsay, lacking personal knowledge and [Graham] so objects." Appellants argue that "all of Ms. Miller's testimony is not mere speculation in to the mind of another, nor is it hearsay," and references us to pages 100–105 and 149–150 of the transcript from her deposition. We agree with appellants that not all of Miller's testimony is speculative. However, Graham did not object to *all* of Miller's testimony as speculative. Rather, Graham objected to that part of her testimony, which concerned "*why* [the Trustee] signed the documents." (Emphasis added).

We note that rule 602 contains a threshold requirement that witnesses may only testify to matters within their personal knowledge. TEX.R. CIV. EVID. 602. An exception to this requirement is the testimony of expert witnesses. *See id.* at 602, 703. Miller is not alleged to be an expert witness. Thus, we conclude the trial court could have reasonably concluded any testimony by Miller, concerning *why* the Trustee signed the documents was speculative and, therefore, not admissible. *See Camacho*, 298 S.W.3d at 638; *see also Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 937–38 (Tex.1998) (indicating that a witness' testimony unsupported by personal

knowledge was "mere speculative, subjective opinion of no evidentiary value").

### c. *The Douglas Appellees' Objections*

■ In connection with the Douglas Appellees' objections, appellants first direct our attention to the following affidavit testimony of Hall:

> Anytime Mr. Douglas needed my mother to sign a document related to the Hall tract, he would provide the documents to me and ask me to take them to my mother for signature.

The Douglas Appellees objected to this statement on the basis that it was speculative, lacks foundation and personal knowledge, is conclusory and contains hearsay. *See* TEX.R. CIV. EVID. 602, 801–805. The Douglas Appellees also objected to this statement on the grounds that "there has been no showing of the frequency of the alleged situation between Mr. Hall and Mr. Douglas in order to constitute a habit pursuant to TEX.R. EVID. 406." The trial court granted the objection "to the extent that 'anytime' means 'every time.'"

Here, appellants contend the trial court's "changing of the testimony to fit the objections is odd (and in error). The statement in the affidavit was 'anytime,' not 'every time.'" However, "anytime" means "at any time whatever: under any circumstances." WEBSTER'S THIRD NEW INT'L DICTIONARY 97 (1981). We, therefore, conclude it was reasonable for the trial court to interpret "anytime" to mean "every time" and disallow the evidence to the extent it violates rule 406. *See* TEX.R. CIV. EVID. 406 (evidence of the habit of a person is relevant to prove that the conduct of the person was in conformity with the habit or routine practice).

■ Appellants next raise the following testimony contained within Hall's affidavit:

These documents included, but were not limited to, subordination agreements that [Douglas] and [Graham] wanted her to sign.

The Douglas Appellees objected to this statement on the basis that it calls for speculation, lacks foundation and personal knowledge, and is conclusory. *See* Tex.R. Civ. Evid. 602, 801–805. The Douglas Appellees further objected that the statement violates the Best Evidence Rule as the documents speak for themselves. *See id.* at 1001–1009.

In their brief, appellants only refute the trial court's ruling with regard to the Douglas Appellees' Best Evidence objection, but this was not the only ground on which the Douglas Appellees objected. As we have already noted, rule 602 contains a threshold requirement that witnesses may only testify to matters within their personal knowledge. Tex.R. Civ. Evid. 602. Therefore, we conclude the trial court could have reasonably determined any testimony by Hall, concerning what *Douglas and Graham wanted* was speculative and, therefore, not admissible. *See Camacho,* 298 S.W.3d at 638; *see also Wal–Mart Stores,* 968 S.W.2d at 937–38.

■ Appellants next bring our attention to the following testimony, contained within Hall's affidavit:

Based on the communications I had with Jim Douglas, he knew that I was telling my mother the things he was telling me in connection with the [Hall Tract].

The Douglas Appellees objected on the basis that the foregoing statement calls for speculation, lacks foundation and personal knowledge, is conclusory, and contains hearsay. *See* Tex.R. Civ. Evid. 602, 801–805. Appellants argue "for the reasons already stated above, these statements are not speculative, do not lack foundation or

personal knowledge, and are not conclusory." However, we conclude the trial court could have reasonably determined any testimony by Hall, concerning what *Douglas knew* was speculative and, therefore, not admissible. *See Camacho,* 298 S.W.3d at 638; *see also* Tex.R. Civ. Evid. 602; *Wal–Mart Stores,* 968 S.W.2d at 937–38.

■ Appellants next direct us to the following group of statements made by Hall in his affidavit:

[1][5] If Jim Douglas had not made promises to my mother and me to re-pay my mother the $9,090,335 owed to her under the promissory note, and if Mr. Douglas had not promised my mother and I a lucrative development deal for the [Hall Tract], we would not have sold the property to Mr. Douglas.

[2] Prior to July of 2005, Mr. Douglas had never conveyed to me or my mother that he had no further intentions of developing the [Hall Tract].

[3] If he had, I would have never consented to the $3,074,000 loan that Douglas procured from [Graham] for [DHL] on July 18, 2005, and my mother never would have executed the subordination documents by which she agreed to subordinate her lien on the [Hall Tract] to [Graham's] lien for this loan.

[4] Prior to November 21, 2006, Mr. Douglas still had never conveyed to me or my mother that he had no further intentions of developing the [Hall Tract].

[5] If he had, I would have never consented to the $3,500,000 loan Douglas procured from [Graham] for [DHL] on November 21, 2006, and my mother never would have executed the subordination documents by which she agreed to subordinate her lien on the [Hall Tract] to [Graham's] lien for this loan.

**5.** We have numbered these statements for ease of discussion.

The Douglas Appellees objected to statement 1 on the grounds it calls for speculation, lacks foundation and personal knowledge, is conclusory, and contains hearsay. *See* TEX.R. CIV. EVID. 602, 801–805. The Douglas Appellees further objected statement 1, urging it violates the Best Evidence Rule as the agreement between the parties sets forth the promises and/or obligations between them. *See id.* at 1001–1009. The Douglas Appellees objected to statements 3 and 5 on the grounds that they call for speculation, lack foundation and personal knowledge, and are conclusory. *See* TEX.R. CIV. EVID. 602. Appellants, on the other hand, argue the referenced statements "clearly do not call for speculation." We disagree.

Statements 1, 3, and 5 are not only speculative in the fact that they set up a hypothetical situation and Hall lends a guess as to what he would have done, but also in concluding what the Trustee would have done under the same hypothetical situation. *See* TEX.R. CIV. EVID. 602; *see also Firemen's Ins. Co. of Newark, New Jersey v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968) (courts do not have the authority to give advice or decide cases based upon speculative, hypothetical, or contingent events); *Tex. Disposal Sys. Landfill, Inc. v. Texas Com'n on Envtl. Quality*, 259 S.W.3d 361, 363–64 (Tex.App.-Amarillo 2008, no pet.) (a purported injury was mere speculation as it depended on a series of possible future events). Therefore, the trial court properly sustained the objections to statements 1, 3, and 5. *See Camacho*, 298 S.W.3d at 638.

With regard to statements 2 and 4, the Douglas Appellees objected that these statements call for speculation, lack foundation and personal knowledge, and are conclusory. *See* TEX.R. CIV. EVID. 602. Again, appellants argue these statements "clearly do not call for speculation." How-

ever, we conclude the trial court could have reasonably determined testimony by Hall, concerning the *intentions of Douglas* was speculative and, therefore, statements 2 and 4 were not admissible. *See Camacho*, 298 S.W.3d at 638; *see also* TEX.R. CIV. EVID. 602; *Wal–Mart Stores*, 968 S.W.2d at 937–38.

■ Finally, appellants contend the Douglas Appellees "make two general objections to the testimony of Mike Hall 'as to the reliance of the [Trustee],' and the deposition testimony of Bettie Miller 'as it relates to the reliance of the [Trustee].'" Although appellants have failed to cite this Court to the objections in the record, we presume that appellants are first referring to the following objection by the Douglas Appellees:

> Mr. Hall impermissibly attempts to speak to [the Trustee's] intentions, Mr. Douglas's intentions, [the Trustee's] knowledge, and why or why not [the Trustee] allegedly took certain courses of action. None of the attestations set forth below are within the personal knowledge of Michael Hall and each and every one of them calls for speculation, lacks foundation, and is conclusory (and in some cases, contains hearsay).

This objection was followed by the more specific references and objections to the affidavit that we have already discussed. Despite appellants' contention to the contrary, we conclude the trial court could have reasonably determined testimony by Hall, concerning the *intentions of Douglas,* the *intentions of the Trustee,* the *Trustee's knowledge,* and *why the Trustee* took certain courses of action was speculative and, therefore, was not admissible. *See Camacho*, 298 S.W.3d at 638; *see also* TEX.R. CIV. EVID. 602.

Second, we presume appellants are referring to the following objection by the Douglas Appellees:

Additionally, any testimony by Bettie Miller, who acts as an assistant to Mike Hall, that the Trustee relied upon alleged representations made by Jim Douglas is inadmissible because it is hearsay, lacks foundation and requires speculation.

As we did with Graham's objection to the testimony of Miller, we conclude the trial court could have reasonably determined any testimony by Miller, concerning *why* the Trustee signed the documents was speculative and, therefore, not admissible. *See Camacho,* 298 S.W.3d at 638; *see also Wal–Mart Stores,* 968 S.W.2d at 937–38.

Having concluded the trial court did not abuse its discretion by sustaining the complained-of objections, we overrule appellants' sixth issue. *See Camacho,* 298 S.W.3d at 638.

### Conclusion

Having overruled appellants' six issues, we affirm the judgment of the trial court. *See* Tex.R. Civ. P. 166a(c), (i).